[No. 8624. Department Two. September 8, 1910.]

## JOHN E. BOYER et al., Appellants, v. FRANK W. PAINE et al., Respondents.[1]

MORTGAGES — DEED AS MORTGAGE — SUBSISTING DEBT. Whether an absolute deed was intended as a mortgage to secure a debt, depends generally upon whether there was an existing indebtedness or liability which was still left subsisting and not discharged.

SAME—EVIDENCE—SUFFICIENCY. An obligation to build a canal and furnish water for irrigation, together with a contract for stipulated damages in case of default, to be performed in the future, is secured by an absolute deed, intended as a mortgage, where the same was not discharged by the deed but was left subsisting, and the performance of the contract was prosecuted after the deed was given.

SAME—REDEMPTION—RIGHT TO WAIVE. Since a mortgagor cannot in his mortgage renounce his right of redemption, a stipulation to that effect in a deed intended as a mortgage is of no effect.

EJECTMENT — RELIEF — JUDGMENT—FORECLOSURE OF MORTGAGE—ISSUES AND PROOF. In an action to recover land under a deed to plaintiffs, which the court found to be intended only as a mortgage, in which action the defendant merely asks that it be adjudged to be the owner subject to the mortgage, it is outside of the issues and error to decree a foreclosure of the mortgage; notwithstanding that evidence was received without objection upon the question whether the mortgage had been satisfied.

EJECTMENT—PLEADING—ISSUES AND PROOF. In an action to recover a certain tract of land under a deed intended as a mortgage, it is error to determine the title to another tract upon which a similar mortgage deed was given at the same time, when there was nothing in the issues as to such tract, and the evidence received thereon was material upon the question of intent as to the tract mentioned in the complaint.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered June 29, 1909, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action of ejectment. Modified.

[1]Reported in 110 Pac. 682.

57

*Bennett & Sinnott* and *Dunphy, Evans & Garrecht,* for appellants.

*T. P. & C. C. Gose* and *H. S. Blandford,* for respondents.

PARKER, J.—This action was commenced to recover possession of real property. The complaint contains only the simple allegations of a complaint in ejectment, in substance, that plaintiffs are owners of lots 1, 2, and 3, of Sec. 13, Tp. 6, R. 33, in Walla Walla county; that they are entitled to the possession of the land, and that the defendants wrongfully withheld the possession thereof. The prayer is for possession of the land and damages for withholding possession. The answer is quite lengthy, and we deem it unnecessary to review its allegations here, further than to state that it alleges, in substance, that the plaintiffs claim title under a certain deed from certain of the defendants executed in behalf of all of them, which deed while absolute in form, was given, together with a deed for other land in Oregon, only as a mortgage to secure the performance of a certain contract, which contract and others claimed to have been executed contemporaneous with the making of the deeds and as part of the same transaction, are set out in the answer, and will be hereafter noticed in our review of the facts developed at the trial. The defendants pray "that the plaintiffs take nothing, that the said instrument of conveyance be adjudged by this court to be a mortgage of indemnity as in this pleading shown, and that the defendant Irrigation Company be adjudged the owner of said lands (subject to said mortgage) and in possession thereof," and in the alternative prays for a reconveyance of the lots in the event the court holds the conveyance thereof was absolute with an agreement to reconvey amounting only to a conditional sale. The reply denies the new matter set forth in the answer, and especially denies that the deed was intended as a mortgage.

A trial before the court without a jury resulted in a judgment denying the prayer of the plaintiffs' complaint, and ad-

judging that the conveyance of the land under which plain-
tiffs claim title, and also the conveyance of the Oregon land,
is in effect a mortgage only, to secure the performance of the
contract and payment of damages that may accrue to plain-
tiffs from a failure to perform the same; that $1,500 is the
amount of damages sustained by plaintiffs on account of de-
fendants failure to perform the conditions of the contract
secured by such mortgage; that upon the payment of the
$1,500 damages within thirty days, the plaintiffs reconvey
lot 1, and also reconvey the Oregon land subject to a cer-
tain mortgage thereon; that in the event of the failure of
defendants to pay the $1,500 damages within thirty days, lot
1 be sold to satisfy the same, thus in effect foreclosing the
lien upon lot 1; and that lots 2 and 3 be reconveyed to de-
fendants, this being upon the ground that the lien has been
satisfied as to those lots. From this disposition of the case,
the plaintiffs have appealed to this court. It is now con-
ceded by appellants that there has been substantial per-
formance of the conditions entitling respondents to recon-
veyance of lots 2 and 3, and no contention is made against
the correctness of the judgment of the trial court direct-
ing such reconveyance.

The dealings out of which this controversy grew were be-
tween John E. Boyer, acting for all the appellants, and Paine
and wife and Burlingame and wife, acting for all the re-
spondents. The interests of the appellants are in common,
as are also the interests of the respondents. The land
which the appellants seek to recover lies in Walla Walla
county, Washington, very near the boundary line between
Oregon and Washington. The other lands incidentally in-
volved lie in Umatilla county, Oregon, also very near the
boundary line between the two states. The dealings between
the parties are somewhat involved and are evidenced for the
most part by conveyances and agreements in writing, and
in order to be fully advised of the nature and extent of
these conveyances and agreements, and their bearing upon

the intent of the parties in executing the conveyance under which appellants claimed title to lot 1, it will be necessary to quote from them at considerable length. The terms of the first agreement between the parties are expressed in a letter from Boyer to Burlingame, which is in effect an agreement to sell the stock of the Walla Walla Irrigation Company owned by appellants. These terms were assented to by Burlingame, and the letter has since been treated by the parties as the contract for such sale. The letter is as follows:

"Walla Walla, Wash., November 3, 1903.
"Mr. E. C. Burlingame,
       "Ellensburg, Wash.

       "Dear Sir—Your favor of October 31, 1903, accepting my proposition for the sale of our shares of stock in the W. W. I. Co. and requesting that I send a letter expressing in general terms the nature of the agreement, is at hand.

"As I understand the agreement it is in general terms as follows: That we will sell all of our shares of stock in the W. W. I. Co. to you in consideration of the following:

"1st. A conveyance by you and your wife giving us a clean title, free from all incumbrances, to your farm in Sec. 18-6-35, including full water rights from the W. W. I. Co. for that portion of the farm that lies north of the company's canal, and any other water rights or appropriations for water rights belonging to or appurtenant to said farm now in use or hereafter to be acquired, and ·everything else appurtenant to the place, with abstract of title brought down to date showing fee simple, absolute, title free from all incumbrances, in yourself.

"2nd. A promissory note for $1,500 signed by yourself and wife, due one year after date, bearing 7% interest, secured by a mortgage on the southwest quarter of the northwest quarter of Sec. 24-6-34—part of your Oregon farm—and all water rights now appurtenant or belonging thereto or hereafter to be acquired, with abstract of title showing fee simple, absolute, title free from all incumbrances, in yourself.

"3rd. A contract signed by yourself and wife insuring that the W. W. I. Co.'s canal shall be built, and a permanent

supply of water be brought thereby, to our 320 acres in sections 19 and 20 in tp. 6, N. R. 34, with sufficient water unappropriated for other purposes and available for our use to properly and fully irrigate all of said 320 acres, the said canal to be constructed and the water available for delivery to us on said lands as aforesaid on or before January 1, 1906, and with right in us to acquire and have the permanent enjoyment of full water rights that will give us permanent supply of water from said company sufficient for the irrigation of as many acres of said 320 acres as we shall choose to irrigate on our paying to you, or such person as you shall designate, the sum of $15 for each acre of said land that we shall choose to have irrigated, our right to acquire such water rights to be exercised by us at any time within three years after such permanent supply of water shall be brought to and be deliverable upon said 320 acres, we to have the right to pay for such water right in cash or in promissory notes bearing interest at 6% per annum. To secure the performance of this agreement and understanding on your part you are to furnish us a bond by the security company of which Dice & Jackson, of Walla Walla are agents, in the sum of $7,500.

"This agreement is to be carried out as far as possible as soon as the papers can be prepared, but you are to have thirty days in which to clear up the title to the property to be conveyed to us and bring the abstract down to date. Our stock to be held by us or in escrow with voting power in us, until the titles to the properties to be conveyed to us, absolutely or by mortgage, are made perfect and all incumbrances removed therefrom. Time to be of the essence of this agreement, and the same to be binding upon, and the benefits and rights thereunder to accrue to, the heirs, representatives, administrators, executors, and assigns of all parties to the agreement.       Yours truly,

"John E. Boyer."

Thereafter, in compliance with the terms expressed in this letter, the following agreement was entered into:

"This Agreement, made and entered into this 5th day of November, 1903, by and between E. C. Burlingame and Elizabeth S. Burlingame, his wife, parties of the first part, and Arthur A. Boyer, Annie I. Norton, John E. Boyer and Sarah I. Boyer, parties of the second part, witnesseth:

"That said parties of the first part, for and in considera-
tion of the sum of one dollar, to them in hand paid, and other
valuable consideration, the receipt whereof is hereby ac-
knowledged, do hereby covenant and agree with, and insure,
warrant and guarantee unto the parties of the second part,
their heirs, executors, administrators and assigns, that be-
fore the first day of January, A. D. 1906, the Walla Walla
Irrigation Company will dig, build, construct and complete
of sufficient size not less than four feet at the bottom, its
main line of canal in the state of Oregon, from the head of
said canal in the state of Washington to the west boundary
line of section nineteen in township six, north of range
thirty-four, east of the Willamette Meridian, as the same is
at present surveyed and located as shown on the blue print
map of said line of canal prepared by D. H. Guilland, civil
engineer; and that said company will before the first day of
January, 1906, secure, and convey by means of said canal
and laterals therefrom a full and permanent supply and
volume of water, unappropriated for other purposes and
available for the use of the parties of the second part, in
such sufficient amount, not less than one one hundred and
sixtieth (1-160) of a cubic foot of water per second of time
for each acre to be irrigated, and deliverable at such points
by gravity through ditches in the earth, as will enable to be
irrigated as they now lie all and every part of the following
described lands, situated in Umatilla county, state of Ore-
gon, particularly described as follows, to wit: the south half
of the northeast quarter, and the north half of the southeast
quarter of section nineteen, and the southwest quarter of
section twenty, all in township six, north of range thirty-four,
east of Willamette Meridian.

"The said parties of the first part further covenant and
agree with and insure, warrant and guarantee unto the
parties of the second part, their heirs, executors, adminis-
trators and assigns, that they, the parties of the first part,
their heirs, executors or administrators, will procure and
deliver or cause to be procured and delivered to the parties
of the second part, their heirs, executors, administrators or
assigns, such sufficient amount of water and deliver the same
by gravity through ditches in the earth as such points on
said premises as will enable the parties of the second part,
their heirs, executors, administrators and assigns, to fully

irrigate according to the rules of good husbandry, such portions of said land as the parties of the second part, their heirs, executors, administrators or assigns, shall desire to have irrigated, and for watering stock raised on the premises and for domestic purposes, said amount of water to be not less than one one hundred and sixtieth (1-160) of one cubic foot per second of time for each acre of land to be irrigated, and will procure and cause to be executed and delivered to the parties of the second part, their heirs, executors, administrators or assigns, one or more good and sufficient contracts, deeds and bonds duly made and executed by some duly organized irrigation company, having sufficient right, title, power, authority, property, responsibility and capacity to insure the performance of its contracts, which contracts, deeds and bonds shall convey, warrant and insure unto the parties of the second part, their heirs, executors, administrators and assigns, a permanent, immediate and perpetual water right or water rights, for, and secure to them the immediate and perpetual use and enjoyment of, such sufficient amount of water, not less than one one hundred and sixtieth (1-160) of one cubic foot per second of time for each acre of land to be irrigated, delivered by gravity through ditches in the earth at such points on said premises as will enable the parties of the second part, their heirs, executors, administrators or assigns, to fully irrigate such portions of said lands as they, the parties of the second part, their heirs, executors, administrators or assigns, shall desire to have irrigated and for watering stock raised on the premises and for domestic purposes; such water and such contracts, deeds and bonds for water to be delivered to the parties of the second part, their heirs, executors, administrators or assigns, in consideration of and forthwith upon the tender, at any time or times within three years after the completion of said main line of canal to the western boundary of said section nineteen, in the manner aforesaid, to the parties of the first part, their heirs, executors, or administrators, by the parties of the second part, their heirs, executors, administrators or assigns, of fifteen dollars for each acre of said lands desired by them to be irrigated, said consideration to be payable in cash or in promissory notes bearing six per cent interest made by the grantees of said water rights. The term 'perpetual water right' used herein shall be con-

sidered to mean a right to the quantity of water specified to be delivered continually from April 1 to November 1 of each and every year.

"Time is and shall be considered of the essence of this contract, and the same shall be binding upon the heirs, executors and administrators of the parties of the first part."

All things agreed to be done by the Burlingames by the terms of the letter agreement of November 3, 1903, were done by them, save the giving of a surety bond for $7,500 to secure the building of the canal and furnishing of the water for the 320 acres of land in section 19. Thereafter it became apparent that the Burlingames could not procure the surety bond, and thereupon Boyer demanded real estate security in lieu of such bond. After some delay, the matter was arranged by the making of certain agreements and conveyances, one of the conveyances being for lots 1, 2 and 3, under which appellants claim title to lot 1. These agreements and conveyances are all dated November 15, 1904, and from a careful reading of the evidence we are convinced that all of them were executed as one transaction with a view to render certain the measure of damages which might result from a failure of the Burlingames to perform their agreement of November 5, 1903, relating to the building of the canal and furnishing water for the 320 acres of land, and with a view to furnishing security therefor in lieu of the surety bond agreed to be given. At this time it is plain no damages had accrued by failure of the Burlingames to cause the canal to be built or the water to be furnished, since they had until January 1st, 1906, more than a year later, to perform that part of their contract. There was no occasion then to pay or satisfy any accrued obligation for none had accrued. No purpose was to be served save to fix a measure of such damages as might result to the appellants in the future from a failure to build the canal or furnish the water, and to secure the payment of such possible future damages. This being the situation on November 15th, 1904, we will quote from the agreements and conveyances then made and entered into

between the parties, in so far as we regard their provisions material to the questions before us:

(1)        "Agreement for Liquidated Damages.

"This Agreement, made and entered into this 15th day of November, 1904, by and between Arthur A. Boyer, Annie I. Norton, John E. Boyer, and Sarah I. Boyer, parties of the first part, and E. C. Burlingame, and Elizabeth S. Burlingame, his wife, parties of the second part,

"Witnesseth: That whereas the parties hereto for the purpose of securing water for, and the perpetual irrigation of, certain lands belonging to said parties of the first part, did heretofore enter into a contract, bearing date the 5th day of November, 1903, wherein and whereby the parties hereto of the second part did, undertake, covenant and agree to perform for the benefit of the parties hereto of the first part, certain things at certain times particularly set forth in said contract.

"And whereas it would be a difficult matter to estimate the damages that would be sustained by the parties of the first part by the failure of the parties hereto of the second part to perform any covenant or agreement by them to be performed contained in said contract; except one certain covenant (hereinafter referred to as 'Covenant for Price of Water') whereby the parties hereto of the second part undertake to fix the price at which they shall deliver to the parties hereto of the first part the water and contracts for water, in said contract agreed to be furnished, to wit: upon the tender to the parties hereto of the second part by the parties hereto of the first part of fifteen dollars ($15) per acre for each acre of land desired by them to be irrigated—damages for the breach of which 'Covenant for Price of Water' could easily be ascertained, and

"Whereas, it is the desire of the parties hereto that the measure of damages for the breach of each and all of the covenants contained in said contract shall be determined on in advance and not left to the uncertain estimate of a jury,

"Now, Therefore, In consideration of the premises, and for the purpose of fixing the amount of liability of the parties hereto of the second part for damages under said contract of November 5, 1903, and the compensation due the parties hereto of the first part for any breach of the covenants contained in said contract.

"It Is Hereby Mutually Stipulated, Covenanted and Agreed,

"1st.  That, if said parties hereto of the second part shall not be able to perform said 'Covenant for Price of Water,' to wit: if they, the said parties hereto of the second part, shall not be able to deliver said water and contracts for water except upon the payment by said parties hereto of the first part of a larger sum than fifteen dollars ($15) per acre to be irrigated, but shall perform all the other covenants contained in said contract of November 5th, 1903, then the measure of damages for such breach of covenant shall be the difference between the amount of money required to be paid by the parties hereto of the first part in order to obtain the water and contracts for water aforesaid to be delivered, as specified in said contract of November 5, 1903, and the sum of money required by the terms of said contract of November 5, 1903, to be paid by them to obtain such delivery.

"2nd.  That, in case of the failure or refusal of said E. C. Burlingame and Elizabeth S. Burlingame, his wife, to do and perform any act, covenant or agreement—other than said 'Covenant for Price of Water'—by them to be done or performed, specified in said contract made by and between said E. C. Burlingame and Elizabeth S. Burlingame, his wife, as parties of the first part, and said Arthur A. Boyer, Annie I. Norton, John E. Boyer, Sarah I. Boyer, as parties of the second part, and bearing date the 5th day of November, 1903, the parties hereto of the second part shall pay the parties hereto of the first part, as liquidated damages for the failure to perform any such act, covenant or agreement, the sum of one dollar (1) on the first day of each month (succeeding December, 1905,) for each acre of said lands, during the time, and as to which acres, said contract shall remain unperformed by the parties hereto of the second part.

"It is, however, understood and agreed between the parties hereto that the maximum compensation and sum total of all amounts to be paid as liquidated damages by said E. C. Burlingame and Elizabeth S. Burlingame, under the terms of this agreement, to said Arthur A. Boyer, Annie I. Norton, John E. Boyer, and Sarah I. Boyer, shall be and is hereby estimated and fixed at the sum of ten thousand dollars ($10,000); which sum of ten thousand dollars or proper part thereof, the said E. C. Burlingame and Elizabeth S. Bur-

lingame, shall upon any such failure or refusal, pay to said Arthur A. Boyer, Annie I. Norton, John E. Boyer and Sarah I. Boyer as liquidated damages for the failure or refusal on their part to fully and faithfully perform said contract of November 5th, 1903, or any of its covenants or agreements.

"And in further consideration of the premises the parties hereto of the first part do hereby waive that part of a certain agreement contained in a letter from John E. Boyer to E. C. Burlingame, dated Walla Walla, Wash., November 3, 1903, and said Burlingame's answer thereto, which provided for the furnishing of a bond in the sum of seven thousand five hundred dollars by the security company of which Dice & Jackson, of Walla Walla, are agents."

(2)      "DEED TO LOTS 1, 2 AND 3.

"This Agreement, made and entered into this 15th day of November, 1904, by and between Frank W. Paine, and Ida B. Paine, his wife, and John G. Paine, as parties of the first part, and John E. Boyer as party of the second part, witnesseth:

"That said parties of the first part for and in consideration of the damages sustained by the parties of the second part, on account of the failure by E. C. Burlingame and Elizabeth S. Burlingame, his wife, to faithfully perform a certain contract entered into between them and the said party of the second part, the terms of which are set forth in a letter from said John E. Boyer to said E. C. Burlingame, bearing date the 3rd day of November, 1903, and in consideration of the relinquishment by said party of the second part, of the right to sue for said breach of contract and benefits accruing to each and all of the parties of the first part, by reason of said relinquishment, have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto the said party of the second part and to his heirs and assigns the following described premises, situate, lying and being in the county of Walla Walla, state of Washington, to wit:

"Lots one, two and three of section thirteen in township six, north of range thirty-three (33) east of Willamette Meridian, together with all water rights belonging or appertaining to said lands.

"To have and to hold, the said premises, with their ap-

purtenances unto the said party of the second part, his heirs and assigns, forever. And the said parties of the first part do hereby covenant that they are the owners in fee simple of said premises, that they are free from all incumbrances, and that they will warrant and defend the same from all lawful claims whatsoever."

(3)                    "DEED TO OREGON LAND.

"This Agreement, made and entered into this 15th day of November, 1904, by and between E. C. Burlingame and Elizabeth S. Burlingame, his wife, as parties of the first part, and John E. Boyer, as party of the second part, witnesseth:

"That said parties of the first part for and in consideration of the damages sustained by the party of the second part, on account of the failure of the parties of the first part to faithfully perform a certain contract entered into between them and said party of the second part, the terms of which are set forth in a letter from said party of the second part to said E. C. Burlingame, bearing date the 3d day of November, 1903, and in consideration of the relinquishment by said party of the second part of the right to sue for said breach of contract, have granted, bargained, sold and by these presents do grant, bargain, sell and convey to the said party of the second part, and to his heirs and assigns, the following described premises, situate, lying and being in the county of Umatilla, state of Oregon, to wit:

"The north half of the northwest quarter, and the southwest quarter of the northwest quarter of section twenty-four (24) of township six (6) north of range thirty-four (34) east of Willamette Meridian, together with all water rights belonging or appertaining to said lands; subject, however, to a certain mortgage made by said first parties to Arthur A. Boyer, Annie I. Norton, John B. Boyer and Sarah I. Boyer, dated the 5th day of November, 1903, and recorded the 12th day of November, 1903, in volume 26 of Mortgages at page 230, records of said county of Umatilla."

(4)      "AGREEMENT TO RECONVEY LOTS 1, 2, AND 3,
                    AND OREGON LAND.

"This Agreement, made and entered into this 15th day of November, 1904, by and between John E. Boyer, and Louise H. Boyer, his wife, parties of the first part, and Frank W. Paine, John G. Paine and E. C. Burlingame, parties of the second part, witnesseth:

"That the parties of the first part hereby covenant and agree that upon the full and timely performance by E. C. Burlingame and Elizabeth S. Burlingame, his wife, of all the covenants and agreements by them to be performed contained in a certain contract in which said Paines by agreement with said Burlingame are interested, made by and between said E. C. Burlingame and Elizabeth S. Burlingame, his wife, on the one hand, and Arthur A. Boyer, Annie I. Norton, John E. Boyer and Sarah I. Boyer, on the other hand, dated the 5th day of November, 1903, a copy of which contract is hereto annexed, said parties of the first part will make, execute and deliver, or cause to be made, executed and delivered, to said Frank W. Paine, and John G. Paine, or to such person or persons as they in writing shall direct, a deed or deeds, good and sufficient, of all the right, title and interest of said first parties in and to the following described lands and premises, situated in the county of Walla Walla, state of Washington, to wit: Lot one (1) of section thirteen (13) in township six (6) north of range thirty-three (33) east of Willamette. And said parties of the first part will make, execute and deliver, or cause to be made, executed and delivered to said E. C. Burlingame, or to such person or persons as he in writing shall direct, a deed or deeds, good and sufficient, of all the right, title and interest of said first parties in and to the following described lands and premises situated in the county of Umatilla, state of Oregon, to wit: The north half of the northwest quarter, and the southwest quarter of the northwest quarter, of section twenty-four (24) in township six (6) north, of range thirty-four (34) east of Willamette Meridian, together with all water rights belonging or appertaining to said lands; subject, however, to a certain mortgage made by said E. C. Burlingame and Elizabeth S. Burlingame, his wife, to Arthur A. Boyer, Annie I. Norton, John E. Boyer and Sarah I. Boyer, dated the 5th day of November, 1903, and recorded on the 12th day of November, 1903, in Volume 26 of Mortgages at page 230, records of said county of Umatilla, the security of which mortgage is intended to be and shall remain unimpaired so long as the debt thereby secured remains unsatisfied.

"And for valuable consideration, the receipt whereof is hereby acknowledged, the parties of the first part hereby

lease, demise and let unto the parties of the second part all and singular the above described lands and premises for a term of years commencing with the 15th day of November, 1904, and ending with the first day of January, 1909; provided, however, that if said E. C. Burlingame and Elizabeth S. Burlingame, his wife, shall fail or refuse to perform any covenant or agreement by them to be performed contained in said above mentioned contract, of November 5, 1903, said failure or refusal shall *ispo facto* terminate this lease and all rights of the parties of the second part thereunder.

"It is understood and agreed that time is and shall be considered as of the essence of this contract."

(5)      "AGREEMENT AS TO MANNER OF PAYING FOR
WATER.

"For valuable consideration it is hereby mutually agreed that, in case it be elected that any water contracts referred to in a certain contract bearing date November 5, 1903, entered into between E. C. Burlingame and Elizabeth S. Burlingame, his wife, as parties of the first part, and Arthur A. Boyer, Annie I. Norton, John E. Boyer, and Sarah I. Boyer, as parties of the second part, be paid for by said parties of the second part, their heirs, representatives or assigns, by promissory note or notes, said note or notes shall bear interest at the rate of six per cent per annum, interest payable annually, principal on or before five years from the date thereof, in five yearly equal payments commencing one year after the date of said note, and the payment thereof shall be secured by a first mortgage executed by the owner or owners of the land to be irrigated upon the land or lands for, and as to which, such water and contract for water shall be given, according to the provisions of said contract of November 5th, 1903.

"Dated Walla Walla, Washington, this 13th day of January, 1905."

There was an agreement entered into, dated the same day, for the reconveyance of lots 2 and 3 upon making certain improvements by the respondents upon lot 1. This contract need not be quoted at length, since, as we have noticed, it is conceded that respondents are entitled to this reconveyance as adjudged by the court.

We think the evidence clearly warrants the conclusion that

the respondents have at all times remained in possession of lots 1, 2 and 3, and the Oregon land conveyed to Boyer by the Paines and Burlingames; that respondents have paid all taxes assessed thereon since the making of the conveyances; that respondents have raised crops upon the land, without accounting to appellants for the proceeds thereof, and without appellants making any demand for such accounting or any demand for the possession thereof until the commencement of this action; that in the year 1905 the construction of the canal was proceeded with by respondents and was, at least, almost completed before January 1, 1906, as contemplated by the contract of November 5, 1903; there being some conflict in the evidence as to whether or not the contract was substantially complied with in that respect.

With these facts before us, we will first consider the principal question in the case; which is, Was the deed of November 5, 1904, from respondents Paine to appellant Boyer for lots 1, 2 and 3, given to secure the performance of the contract of November 5, 1903, and the damages which might result to appellants from a failure to so perform, and was that deed intended to be in effect only a mortgage, or was it intended as an absolute conveyance without any right of redemption in the respondents except a mere right to repurchase the same? We believe there are certain well recognized principles of law applicable to these facts which will answer this question in respondents' favor. In discussing the question of when a conveyance absolute in form becomes in effect a mortgage, Mr. Pomeroy, in his Equity Jurisprudence, vol. 3 (3d. ed.), § 1195, says:

"Whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own special circumstances; for the question finally turns, in all cases, upon the real intention of the parties as shown upon the face of the writings, or as disclosed by extrinsic evidence. A general criterion, however, has been established by an overwhelming consensus of authorities, which furnishes a sufficient test in

the great majority of cases; and whenever the application
of this test still leaves a doubt, the American courts, from
obvious motives of policy, have generally leaned in favor of
the mortgage.  This criterion is the continued existence of a
debt or liability between the parties, so that the conveyance
is in reality intended as a security for the debt or indemnity
against the liability.  If there is an indebtedness or liability
between the parties, either a debt existing prior to the con-
veyance, or a debt arising from a loan made at the time
of the conveyance, or from any other cause, and this debt
is still left subsisting, not being discharged or satisfied by
the conveyance, but the grantor is regarded as still owing
and bound to pay it at some future time, so that the payment
stipulated for in the agreement to reconvey is in reality the
payment of this existing debt, then the whole transaction
amounts to a mortgage, whatever language the parties may
have used, and whatever stipulations they may have inserted
in the instruments."

In 27 Cyc. 1010, the same doctrine is stated in the text
as follows:

"A definitive test to determine whether an absolute deed,
executed in consideration of a precedent debt, with an at-
tendant agreement to reconvey the premises to the grantor
on payment of the consideration, constitutes a mortgage or a
conditional sale is found in the question whether the debt was
discharged by the deed or subsisted afterward. . . . If the
conveyance leaves the debt still due and owing, the grantor
being bound to pay it at some future time, and being en-
titled to receive back his property when he does pay it, then
the whole transaction amounts to a mortgage, whatever form
the parties may have given to it."

See, also, 1 Jones, Mortgages (6th ed.), §§ 264, 265.

In support of appellants' contentions that this deed must
be regarded as an absolute conveyance, the following cases
decided by this court are called to our attention and relied
upon by learned counsel for appellants:  *Dignan v. Moore*,
8 Wash. 312, 36 Pac. 146; *Swarm v. Boggs*, 12 Wash. 246,
40 Pac. 941; *Reed v. Parker*, 33 Wash. 107, 74 Pac. 61;
*Conner v. Clapp*, 37 Wash. 299, 79 Pac. 929.  We think,
however, a critical reading of these cases will show that none

of them involve agreements where a debt or other obligation subsisted against the grantor after the making of the conveyances there claimed to have been given as security. The remarks of the court in *Reed v. Parker*, on page 116, recognizes the rule of the foregoing quotations from Pomeroy and Cyc. These cases are therefore not controlling in this case, if the obligation to build the canal and furnish water, and to respond in damages for any failure in that regard, continued to exist after the making of the deed relied upon by appellants in support of their title to lot 1. It seems to us that the contract of November 5, 1903, to build the canal and furnish water by the first day of January, 1906, together with the contract of November 15, 1904, agreeing to the measure of damages which might result to respondent by a failure to complete the canal and furnish water, clearly evidence an obligation to continue in existence after the making of the deed, and that the deed was given to secure the fulfillment of such obligation.

We are also of the opinion that such an obligation to be performed in the future has the same effect upon the question of the conveyance being a mortgage to secure the same as if it was an obligation to pay a debt in the form of a fixed sum due at a certain time in the future. The very fact that the parties entered into the agreement fixing the measure of damages which might arise in the future shows that they did not regard the obligation to complete the canal and furnish water, and the obligation to pay damages in case of failure so to do, as satisfied by the giving of the deed. If it had then been the intentions of the parties to regard the giving of the deed as a full satisfaction of respondents' obligations under the contract of November 5, 1903, there would have been no occasion to enter into the agreement of November 15, 1904, in connection with the giving of the deed, as to the measure of possible future damages. Indeed, at that time there were no accrued damages to satisfy. There had been no failure to perform the contract to

build the canal and furnish water, for there was then more than a year left in which to perform that contract. The only condition then unperformed was the failure to furnish the surety bond, and of course, no damage could accrue by reason of that failure unless there also be a failure to build the canal and furnish water, which we have seen could not occur until more than a year after that time.

As a further evidence of the fact that the parties had in mind an obligation to be performed by the respondents in the future, we have the fact that the canal was not then constructed, and that respondents performed at least nearly the whole of the construction work upon the canal after the giving of the deeds, and on January 13, 1905, after the giving of the deeds and the making of the other contemporaneous agreements, the agreement was entered into as to the manner of paying for the water which was to be delivered in the future by this canal. Clearly, respondents' obligation to perform the contract and to pay damages upon a failure so to do did not cease to exist upon the giving of the deed.

It is true that the deed upon its face purports to be given in consideration of damages sustained on account of failure to perform the conditions of the contract of November 3, 1903; but we have seen that the only failure in the performance of that contract was the failure to furnish the surety bond, and that no damages could occur by reason thereof except such as might flow from the failure to do the things which the surety bond was intended to secure; to wit, the building of the canal and the furnishing of water; and there could be no damages on that account until the time for the performance of that agreement had expired, which would be January 1, 1906, more than a year after the giving of the deeds. The most that can be said of this and other language in the deed evidencing an intent to make it an absolute conveyance, is that such language indicates a possible attempt to waive respondents' right of redemption; and it is elementary that this cannot be done if the deed was in fact

given as a mortgage. In 1 Jones on Mortgages (6th ed.), § 251, it is said:

"The mortgagor is not allowed to renounce beforehand his privilege of redemption. Generally, every one may renounce any privilege or surrender any right he has; but an exception is made in favor of debtors who have mortgaged their property, for the reason that their necessities often drive them to make ruinous concessions in order to raise money. When one borrows money upon the security of his property, he is not allowed by any form of words to preclude himself from redeeming. A stipulation, that unless the debt is paid within a certain time the deed shall be absolute, will not be given that effect, because the very terms of the agreement show that the instrument is a mortgage, and such agreement of the parties in the mortgage itself or otherwise, made at the time, is without effect. He cannot agree that upon default his mortgage shall become an absolute conveyance."

See, also, 27 Cyc. 994, 1098. We are of the opinion that this deed is in effect a mortgage.

Let us now consider that part of the judgment which in effect forecloses the mortgage upon lot 1, existing by virtue of the deed and agreements of November 15, 1904. It is contended by counsel for appellant that, even if this deed be held to be a mortgage, there is no warrant for a judgment foreclosing the same in this action, and to that extent the judgment is in any event erroneous, because it is an attempt to determine issues not involved in the case. We think this contention must be upheld. There is nothing in the appellants' complaint or reply that could be construed as putting in issue the matter of the foreclosure. The facts there alleged only go to the question of appellants' title to the land under the deed. Indeed, the sole contention of appellants, as evidenced by their complaint and reply, is that the deed conveyed an absolute title and was not given as a mortgage. The answer of respondents alleges only facts tending to show that the deed is in effect a mortgage, and prays "that the defendant irrigation company be adjudged the owner of said lands, subject to said mortgage," and then, after an al-

ternative prayer for a reconveyance in the event the court
should hold the contract to reconvey to be a conditional sale,
the prayer concludes, "that the court do full and complete
equity in this case."

It seems clear to us that a foreclosure, or the possibility
thereof, in this action could not have been in the minds of the
appellants when they were offering their proof in this case.
They were contending that there was no such mortgage,
while respondents were contending to the contrary and seek-
ing to have the irrigation company adjudged the owner of the
land "subject to said mortgage." Neither party was seek-
ing to have the amount of damages which the mortgage was
given to secure adjudicated. The existence of the mortgage
was in issue but not its foreclosure. The evidence covered
rather a wide range upon the question of the completion of
the canal, and incidentally as to whether or not it was so
far completed that only nominal damages had resulted to
appellants. Much of this evidence was given without objec-
tions, and learned counsel for respondents contend that the
issues were thus voluntarily broadened so as to enable the
court to render that part of its judgment which, in effect,
foreclosed the mortgage, in view of the general concluding
prayer in the answer. We cannot agree with this conten-
tion. This evidence was material upon the question of
whether or not the mortgage had been satisfied, and its ad-
mission probably broadened the issues so as to include that
question, and probably the court could have adjudged the
mortgage satisfied had this evidence been sufficient to show
that fact; but it seems to us, the very fact that the court
found the damages secured by the mortgage then amounted
to $1,500, shows that such damage was more than nominal,
and therefore that the mortgage was not satisfied. We are
of the opinion that the receiving of evidence touching this
question in no event broadened the issues beyond the question
of the satisfaction of the mortgage, and fell far short of

putting in issue its foreclosure. In rendering this part of the judgment, we think the learned trial court was in error.

We have noticed that the judgment assumes to adjudicate the rights of the parties to the Oregon land, which was conveyed by the Burlingames to Boyer at the same time as the conveyance of lot 1 by the Paines to Boyer. This is claimed to be erroneous, because the title to that land was not put in issue by the pleadings in this cause, and because the court could in no event have jurisdiction to determine title to that land. It is plain that there is nothing in the pleadings in this case indicating any intention by any of the parties to put in issue here the title to that land. The fact that it appears incidentally by the proof in this case that the deed to that land was given with the deed to lot 1 for the purpose of securing the performance of the contract of November 15, 1904, to construct the canal and furnish the water, and was therefore in effect a mortgage, does not authorize the rendering of a judgment in this case to that effect. It may be that the facts in this case show respondent is entitled to such a judgment, but that was not a question before the court for adjudication in this case. The evidence tending to show that the deed to the Oregon land was given as a mortgage was material to the question of the intent of the parties in the execution of the deed to lot 1 which is here involved, but that did not bring into this case for adjudication the title to the Oregon land. We think this portion of the judgment is erroneous.

We conclude that in so far as the judgment denies to appellants the recovery of lot 1 and adjudges the deed of November 15, 1904, given by respondents Paine, to appellant John E. Boyer for lots 1, 2 and 3, to be in effect a mortgage to secure the performance of the contract for the construction of the canal, the furnishing of water, and the payment of damages that might accrue to appellants from a failure of such performance, and directs the reconveyance of lots 2 and 3, the judgment should be affirmed, and that as to

all other matters therein sought to be adjudicated the judgment should be reversed. It is so ordered.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.