[No. 24660.  Department Two.  January 11, 1934.]

PLAZA FARMERS UNION WAREHOUSE & ELEVATOR
COMPANY, *Respondent,* v. C. V. TOMLINSON
*et al., Appellants.*[1]

*Clyde H. Belknap,* for appellants.
*Brown & Weller,* for respondent.

BEALS, C. J.—Prior to 1930, the defendants, C. V.
and Effie Tomlinson, were for several years the owners
of a 260-acre wheat farm in Spokane county.  In July,
1930, defendants found themselves in the following per-
plexing situation: Their land was encumbered by a
first mortgage, which had been reduced to $13,000,
and a second mortgage, which had been reduced to
$2,000 (due November following).  They were indebted
to plaintiff in the sum of $836 upon a note.  The farm
was in summer fallow and would produce no crop that
year.  They owned the crop upon a rented farm in
Idaho, and needed $500 to finance its harvest.  Interest

[1]Reported in 28 P. (2d) 299.

would be due on the first mortgage, together with taxes on the land, before another crop could be harvested, and seed for the planting would have to be procured.

Defendants' situation seemed desperate, and they broached to plaintiff the matter of a five-hundred-dollar loan to harvest the crop on the Idaho ranch. The negotiations were continued, and finally the following scheme was carried into effect: Defendants, by deed of bargain and sale, in consideration of $4,575, conveyed their land to plaintiff, taking back a contract whereby defendants agreed to buy the land for $4,575, payable in installments as provided for in the contract. Plaintiff executed a special warranty deed conveying the land to defendants, which was to be placed in escrow together with the contract. This phase of the transaction was never consummated, because defendants failed to call at the office of the escrow holder where they were to sign the escrow agreement. The items which made up the purchase price of $4,575 which plaintiff paid for the land were as follows: Interest, $715; taxes, $212; cash, $500; second mortgage, $2,000; old account, $836; together with a few other small items.

Plaintiff made the payments which it was agreed between the parties that it would make, strictly in accordance with the terms of its promise. Defendants sowed and harvested the crop during the year 1931, but made no payments on the contract. They also neglected to pay the taxes and the interest on the first mortgage. During the spring of 1932, plaintiff rented the farm to one Frank Nealey, who summer-fallowed the land, all with the knowledge of defendants. Defendant Effie Tomlinson, after the lease to Mr. Nealey, wrote to plaintiff asking permission to remain on the farm until Mr. Nealey desired possession of the buildings, so that her children could continue attending

school. She also requested permission to put in a garden.

During the fall of 1932, when Mr. Nealey attempted to seed the farm for the 1933 crop, defendants refused to allow him to go on the place, whereupon plaintiff brought this action seeking to obtain possession of the farm and quiet its title thereto. The action was tried to the court, and from a judgment in plaintiff's favor defendants appeal.

■ Several errors are assigned, the only question presented, however, being whether or not the transaction between the parties was an absolute conveyance of the land with a contract to repurchase, or whether it should be held that, in law, what was done amounted to a loan from respondent to appellants, secured by a mortgage on the farm, which respondent must foreclose before procuring title thereto.

The burden rests upon appellants to show by clear and convincing evidence that the written instruments which make up the transaction between the parties are, in fact, something other than that which they on their face purport to be. *Johnson v. National Bank of Commerce of Tacoma,* 65 Wash. 261, 118 Pac. 21, L. R. A. 1916B, 4.

Respondent relies upon the well-established rule that the findings of the trial court upon conflicting testimony will be followed by this court unless it appears that the same are against the weight of the testimony. Respondent also argues that, in determining the question as to whether or not a particular transaction is to be held to have resulted in an absolute conveyance of title or a mortgage merely, the intent of the parties is of controlling importance. In this connection, respondent cites the opinion of the supreme court of the United States written by Chief Justice Marshall in the case of *Conway v. Alexander,* 11 U. S.

218. We proceed to consider the facts presented by the record in the case at bar.

As part of the total consideration of $4,575 for which appellants conveyed the land to respondent, respondent agreed to pay taxes which were not then a lien upon the land, and also agreed to furnish seed wheat for the next year's crop. It is admitted that the negotiations which resulted in the transaction consummated between the parties were opened by appellants requesting respondent to make them a loan, and that the situation was, in part, at least, precipitated by respondent's desire to receive the $836 due it from appellants. The items which made up the expressed consideration for the deed to respondent exactly equal the amount which appellants agreed to pay for the land according to the terms of the contract of purchase. By this contract, appellants bound themselves absolutely to pay the $4,575 together with interest. The debt, therefore, including the amount theretofore owing from appellants to respondent on the note, survived, and the relation of debtor and creditor still existed between the parties.

During the second conference in the course of the negotiations, appellant Effie Tomlinson asked one of respondent's representatives for a piece of paper upon which to make some notes. This paper is in evidence, and upon it appears in Mrs. Tomlinson's handwriting, "Warranty deed to Secure Loan," followed by figures and memoranda indicating the items which made up the consideration for the deed. A tabulation of the items making up the total amount was also made on the paper by one of respondent's officers. Above this particular tabulation appear the words, "Plaza Farmers Union Loan," in Mrs. Tomlinson's handwriting.

Courts have always jealously guarded the equity of redemption in favor of the mortgagor. No valid contract of waiver of this right of redemption can be made by the mortgagor. *Boyer v. Paine,* 60 Wash. 56, 110 Pac. 682.

In the case of *Hoover v. Bouffleur,* 74 Wash. 382, 133 Pac. 602, this court said:

"A court of equity looks to the intent of a contract rather than to its form, and although the spoken words of the witness may be at variance with the actual conduct of the parties, they will not be accepted or permitted to overcome the true intent as it is gathered from the whole transaction. *Johnson v. National Bank of Commerce, supra* [65 Wash. 261, 118 Pac. 21]. Although appellant was careful to refrain from the use of the words 'loan' and 'mortgage,' and to impress upon the plaintiffs that he was buying the property, it is our duty to go beyond his spoken words and review and consider every material circumstance."

"Once a mortgage, always a mortgage" is a doctrine universally recognized. *Plummer v. Ilse,* 41 Wash. 5, 82 Pac. 1009, 2 L. R. A. (N. S.) 627, 111 Am. St. 997.

In the case at bar, there was a debt due from appellants to respondent prior to the execution of the deed and contract. By the contract, this debt was merged in the larger debt they created, which appellants were obligated to pay. It is clear that appellants were in urgent need of funds, and that the negotiations between the parties were initiated by appellants' request for a loan. Appellants also argue that the facts that they remained in possession of the land and that the equity therein was worth more than the consideration which they agreed to pay in the contract, indicate that the transaction was a loan and not a sale. While there is testimony in the record that appellants' equity in the farm was worth considerably more than $5,000, we

are not disposed to regard either this testimony or the fact of appellants' possession as of particular importance.

Respondent argues that appellants recognized the transaction as a sale by raising no objection to respondent's tenant entering upon the property, and because appellant Effie Tomlinson requested permission to remain on the property and to cultivate a small portion thereof. Respondent also argues that the intent of the parties should govern, and that it appears that the parties (as found by the trial court) intended a sale and a contract to repurchase rather than a loan.

In the case of *Conway v. Alexander, supra,* it was held that the real intention of the parties, as shown upon the face of the writings or as disclosed by extrinsic evidence, should govern. That case involved the validity of a conveyance of land in trust to convey the same to A in case B should, on a certain day, fail to repay money and interest advanced by A, the court holding that, upon conveyance by the trustees in accordance with the agreement, B had no equity of redemption, he having failed to make the required payment. The court, having discussed the power of individuals to enter into lawful contracts and observed that "doubtful cases have generally been decided to be mortgages," considered the terms of the written agreements in the record before it, and called attention to the facts that the deed was not given to secure a pre-existing debt, that the connection between the parties commenced with the particular transaction in question, and that it clearly appeared that there had been no prior negotiation between the parties respecting a loan of money, nor any concerning a mortgage. In this connection, the court said at p. 238:

"No expression is proved to have ever fallen from Robert Alexander, before or after the transaction, re-

specting a loan or a mortgage. He does not appear to have imagined that money was to be so obtained; and when it became absolutely necessary to raise money, he seems to have considered the sale of the property as his only resource.

"To this circumstance, the court attaches much importance. Had there been any treaty—any conversation respecting a loan or a mortgage, the deed might have been, with more reason, considered as a cover intended to veil a transaction differing in reality from the appearance it assumed. But there was no such conversation. The parties met and treated upon the ground of sale and not of mortgage."

In the course of the opinion, the court calls attention to the fact that a court of chancery will invariably defeat an intent to take a security for money and at the same time avoid the equity of redemption. The case cited clearly lays down the basic principles which govern such a transaction as is here presented, and under the facts in this case is not an authority which supports the judgment now before us for review.

Respondent also relies upon the case of *Felton v. Grier,* 109 Ga. 320, 35 S. E. 175, in which the supreme court of Georgia held a conveyance of land to be a *bona fide* bargain and sale with a contemporaneous agreement to resell. In the case cited, the action was brought by a party occupying a position similar to respondent's here as an action upon promissory notes given in connection with a bond for a deed. The action was tried to a jury, which returned a "special verdict of the facts" in favor of the plaintiff. The evidence was conflicting, and the court found that, taking as true the facts which followed the findings of the jury as a necessary consequence, it should be held that the transaction was a sale. The court, feeling itself bound by the verdict of the jury as to the facts, simply held,

" . . . that it is within the power of rational and independent adults, if they really desire and intend to do a thing of this kind, to legally accomplish their purpose."

In the case at bar, we have before us the findings of the trial court reciting the execution of the documents, that it was the intent of the parties that the deed should be an absolute conveyance, and that the same was not given by way of mortgage or as security. In this case, there is little conflict in the evidence as to what was actually done by the parties. Under these circumstances, a finding as to intent, referring as it does to a mental attitude, is not on appeal entitled to the same weight as a direct finding of physical fact upon disputed testimony. The trial court did find upon disputed testimony that the consideration expressed in the deed was the fair and reasonable value of the premises at the time the transaction was consummated. In view of this finding, we disregard the testimony introduced on appellants' behalf to the effect that the value of the land was much greater.

In the case at bar, it clearly appears that the negotiations were opened by appellants' request for a loan. Respondent was not in the business of buying farm land, though it sometimes loaned money. The consideration for the deed was the aggregate of sums necessary to protect the land, to enable appellants to raise a crop thereon the following year, together with appellants' prior debt to respondent. Respondent did not deliver to appellants all of the money called for by the transaction, but itself disbursed several of the items as the amounts fell due, allowing appellants credit as against these deferred payments for interest thereon up to the time the money was disbursed by respondent. Appellants did not convey the land to respondent by warranty deed, but by deed of bargain

and sale, appellants to receive, upon carrying out their contract, merely a deed of special warranty. *Appellants obligated themselves to pay the entire amount due according to the terms of the contract.* The original debt to respondent, therefore, survived, although augmented by other considerable items expended by the parties for the benefit of the land, all of which appellants agreed to pay.

This matter of the continuing relation of debtor and creditor we regard as of great importance in determining the true nature of the transaction between the parties. As evidence of the intention of the parties, the notation by Mrs. Tomlinson referring to the matter as a ''loan'' is of some significance.

. On the other hand, we have the conduct of appellants in apparently recognizing respondent's tenant as entitled to possession of the premises. In this matter, however, we find no estoppel, but merely an evidentiary circumstance. In our opinion, the evidence, considered as a whole, clearly indicates that respondent was making a loan and taking security therefor, and that, in law, it must be held that the deed and contract amount to nothing more than a mortgage in respondent's favor.

Respondent complains that appellants have the benefit of some expenditures on the property by its tenant. Appellants, of course, asking equity, must do equity, and may be liable to some extent in connection with the matter referred to.

The judgment appealed from is reversed, with instructions to the trial court to allow respondent to file herein, if it desires to do so, an amended complaint, setting up its claim and praying for such relief as it may be entitled to receive.

HOLCOMB, TOLMAN, MAIN, and GERAGHTY, JJ., concur.