[No. 28623. Department Two. March 27, 1942.]

ROBERT BEADLE et al., *Respondents and Cross-appellants,* v. EMIL A. BARTA et al., *Appellants.*

EMIL A. BARTA et al., *Appellants,* v. ELIZABETH SAVAGE BEADLE et al., *Respondents and Cross-appellants.*[1]

[1] Reported in 123 P. (2d) 761.

68

*Ralph Woods*, for appellants.

*Arthur F. York*, for respondents and cross-appellants.

BLAKE, J.—The above-entitled actions were consolidated for trial in the court below and for hearing on

appeal here. The first action was instituted by the Beadles, under the unlawful detainer statutes, for the possession of what we shall refer to as the Lake City property. Subsequent to the commencement of that action, the Bartas brought the other action in equity to have the deed under which the Beadles claimed title to the property declared a mortgage. Upon issues joined, trial was had and a decree entered declaring the deed under which the Beadles claimed title to be a mortgage, and decreeing foreclosure. Both sides appeal.

While the main question for determination— whether the Beadles are the owners or merely the mortgagees of the Lake City property—is simple, the facts giving rise to it are quite complicated. To begin with, at the time the transaction occurred, Mrs. Beadle's name was Gregory, and she dealt with the Lake City property under that name. We shall refer to her, however, as Mrs. Beadle. Prior to June 4, 1937, the Lake City property was owned by Loraine Saxton. Mrs. Beadle held a mortgage on it, in the amount of approximately $2,350, which was then in default. The Bartas were the owners of what we shall refer to as the Northlake property, upon which there was a mortgage of about $500.

On May 21st, Mrs. Saxton and the Bartas entered into an exchange agreement whereby each party was to convey to the other the respective properties, subject to the encumbrances. Pursuant to the terms of the agreement, the Bartas conveyed the Northlake property to Mrs. Saxton. The latter, however, instead of conveying the Lake City property to the Bartas, deeded it to Mrs. Beadle for "Ten Dollars and other considerations." This deed was executed June 4, 1937, and filed for record June 24th.

In the meantime, on June 21, 1937, Mrs. Beadle and

the Bartas entered into a contract whereby the former agreed to sell, and the latter agreed to buy, the Lake City property for *$2,500.* (It is to be noted that the purchase price named in the contract is in the approximate amount of the balance due under the mortgage from Mrs. Saxton to Mrs. Beadle.) On the same day, the Bartas executed a quitclaim deed to the Lake City property to Mrs. Beadle, which they delivered in escrow to Stern & Stern, realtors. By the terms of the escrow agreement, the latter were authorized to deliver the deed to Mrs. Beadle at any time the Bartas were more than sixty days in default in payments due under the contract.

The entire transaction—the exchange between Mrs. Saxton and the Bartas, the conveyance of the Lake City property by Mrs. Saxton to Mrs. Beadle, and the deal between the latter and the Bartas—was handled by Stern & Stern. They had been Mrs. Beadle's agents for the collection of payments on the Saxton mortgage and continued to be her agents for the collection of payments under her contract with the Bartas. It does not appear that Mrs. Beadle, after taking the deed to the Lake City property, ever executed or filed a release of the mortgage. Nor does it appear that she ever formed the intention that the mortgage should merge in the title. On the contrary, we think the evidence abundantly proves that the mortgage debt was never satisfied nor extinguished; that the deal was put through in the manner it was with the thought of making assurance doubly sure; and that Mrs. Beadle would be able, in case of default by the Bartas, to acquire a clear title through the quitclaim deed and obtain possession through the summary proceedings provided for in the contract.

Where the transaction, however, brings about or continues a relationship of creditor and debtor, the

latter's right of redemption cannot be cut off by a deed executed by him and put in escrow for delivery upon his default in payment of the debt. Nor can he, either by stipulation in the mortgage deed or by collateral agreement, waive his right of redemption. *Boyer v. Paine,* 60 Wash. 56, 110 Pac. 682.

In the last-cited case, the court adopted the principles laid down by Pomeroy for the determination of the character of such a transaction as this. In his Equity Jurisprudence, Vol. 3 (3d ed.), § 1195, Pomeroy says:

"Whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own special circumstances; for the question finally turns, in all cases, upon the real intention of the parties as shown upon the face of the writings, or as disclosed by extrinsic evidence. A general criterion, however, has been established by an overwhelming consensus of authorities, which furnishes a sufficient test in the great majority of cases; and whenever the application of this test still leaves a *doubt,* the American courts, from obvious motives of policy, have generally leaned in favor of the mortgage. This criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instruments."

This test was applied in the quite recent case of *Plaza Farmers Union, etc., Co. v. Tomlinson,* 176 Wash. 178, 28 P. (2d) 299.

Applying the principle to this case, we think it is clear not only from the extrinsic evidence, but the instruments themselves, that the deed from Mrs. Saxton to Mrs. Beadle was intended as a mortgage. For the contract of sale to the Bartas was for a consideration which approximately equalled the amount of the mortgage indebtedness. In this respect, the contract conformed to the exchange agreement between Mrs. Saxton and the Bartas—a trade of properties subject to existing encumbrances. We think, as did the trial court, that the transaction was a three-cornered deal whereby the mortgage indebtedness of Mrs. Saxton was merely shifted to the Bartas.

This conclusion finds additional support in the values of the two properties at the time of the transaction. There seems to be no question but that the Lake City property was worth $4,000 or more; and that the Bartas' equity in the North Lake property was worth $1,600. It is improbable that the Beadles would have sold a property worth $4,000 for $2,500; and it seems equally improbable that the Bartas would have traded their equity in the North Lake property under the hazard of losing what they got for it by the summary forfeiture provided for in the contract of sale.

Since we hold the transaction constitutes a mortgage, it is unnecessary to give further consideration to the questions raised by the Beadles' appeal. There are, however, three collateral questions raised on the Bartas' appeal: (a) In view of the issues raised by the pleadings, was the court warranted in decreeing foreclosure; (b) were attorney's fees properly allowed to the Beadles; (c) and should a motion of the Bartas' to reopen the case for the introduction of further

evidence, with respect to the amount due on the mortgage, have been granted?

■    (a) The issue tendered by the Beadles was for possession of the property; that·tendered by the Bartas was that the deed be declared a mortgage—foreclosure was not sought.

It is well settled that the court cannot, over the objection of a party, adjudicate matters outside the issues. *Chapman v. Allen,* 11 Wash. 627, 40 Pac. 219; *Ludwig v. Hollingsworth,* 153 Wash. 654, 280 Pac. 60. The rule was applied in *Boyer v. Paine, supra.* There, the plaintiffs' action was in ejectment. The defendants countered with a bill in equity to have plaintiffs' deed declared a mortgage. The trial court not only declared the deed to be a mortgage, but also decreed foreclosure. This court held that the relief of foreclosure went beyond the issues, and reversed the decree in that respect.

We think, however, that the Bartas are in no position to invoke the rule. When the cause was called for trial, a motion was heard to set aside a default judgment theretofore obtained by the Beadles. The court granted this motion, and no error has been assigned upon the ruling. After granting the motion and before any evidence was introduced on the merits, the court said: "Now that the judgment is set aside, this becomes a question of whether or not it is a mortgage that should be foreclosed or if it is not a mortgage whether the relief prayed should be granted." Counsel for the Bartas, by his silence, acquiesced in this view of the issues. Furthermore, we think that, so far as appellants Barta were concerned, the case was conducted throughout on the theory that it was a foreclosure proceeding. Under the circumstances, they are not in a position to invoke the rule relied upon.

■    (b) The escrow agreement under which the

quitclaim deed from the Bartas to Mrs. Beadle was held by Stern & Stern recited that the purpose was "to cancel the above mentioned real estate contract without the costs necessary to legal procedure." Attorney's fees are, of course, allowable only when provided for by statute or express agreement. *Miesen v. Motter*, 115 Wash. 49, 54, 196 Pac. 659; *State ex rel. Macri v. Bremerton*, 8 Wn. (2d) 93, 111 P. (2d) 612. We think the foregoing recital in the escrow agreement does not amount to a promise to pay attorney's fees in the event of suit. It was, therefore, error to allow attorney's fees to the Beadles.

(c) Almor Stern, of the firm of Stern & Stern, the escrow holder, was called as a witness early in the trial. Among other things, he testified as to the amount of the balance due under the contract (mortgage) and submitted a statement, which was admitted as exhibit D, showing amounts and the time of payments made by the Bartas. After the parties had rested, counsel for the Bartas asked for time to examine exhibit D. It being near the end of the day, the court adjourned until the next morning. When it reconvened, counsel for Bartas moved to reopen in order that he might introduce further evidence with respect to the balance due Mrs. Beadle. The court denied the motion. Such a motion is addressed to the sound discretion of the court. Under the circumstances, we do not think the court abused its discretion in refusing to reopen the case for the introduction of further evidence on that issue.

The decree will be affirmed except as to the allowance of attorney's fees. The cause is remanded with direction to modify the decree in that respect.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.