## COWELL v. CRAIG.

(Circuit Court, N. D. California. March 26, 1897.)

No. 11,953.

MORTGAGES—CONDITIONAL SALES—EVIDENCE.

On an application for a loan to redeem property from a foreclosure sale, a deed absolute on its face was executed by the applicant, reciting a consideration of $5,000; and an instrument dated the next day was executed by the grantee, agreeing to reconvey on payment of $5,000 within three years, with interest at 1 per cent. per month. A lease of the premises, of the same date, was executed by the grantee to the grantor for the term of three years, at a rental of $50 per month. The consideration recited was but little, if any, less than the actual value of the property. It was entirely optional with the grantor to purchase or not, and he was not bound to repay the purchase price. In an insolvency proceeding commenced by him, and on other occasions, he emphatically declared that he was not the owner of the property, but held it merely as lessee. Soon after the expiration of the three years, he made a tender to the grantee in accordance with the terms of the deed. *Held*, that the transaction must be construed as a conditional sale, and not as a mortgage.

E. S. Pillsbury and R. Y. Hayne, for plaintiff.
D. M. Delmas and W. H. Beatty, for defendant.

MORROW, District Judge (orally). This is an action in ejectment. The plaintiff alleges ownership in fee of the land in controversy, and the possession of the defendant. In support of his claim, plaintiff has introduced testimony showing that he derives title from the defendant by a deed to Henry Cowell, plaintiff's grantor. The deed is absolute on its face, is dated November 17, 1879, and the consideration is $5,000. The defendant admits possession of the land and the execution of the deed of conveyance, but claims that the deed was intended as a mortgage, and, as part of the transaction, produces an agreement signed by Henry Cowell, dated November 18, 1879, wherein the latter agreed to reconvey upon the payment of $5,000 within three years, with interest at 1 per cent. per month; also, a lease of the premises from Cowell to Craig, dated November 18, 1879, for the term of three years, at a rental of $50 per month. The question is, was this transaction intended as a mortgage on the premises to secure the payment of $5,000 in three years? The law relating to the construction of instruments of conveyance of this character has been much discussed in the courts, and I think the principles have been very clearly established. Where there is but a single instrument, and that is a deed of conveyance, the courts have determined that parol testimony introduced for the purpose of converting such an instrument into a mortgage must be very clear and convincing; that it must appear to the court, beyond reasonable controversy, that it was the intention of the parties that the deed should be a mortgage, and not an absolute conveyance. Howland v. Blake, 97 U. S. 624; Henley v. Hotaling, 41 Cal. 22. This must necessarily be so; otherwise there would be no security whatever in deeds of conveyance, because it would always be open for persons to come in, where prop-

erty had increased in value after such a transaction, and contend that the conveyance was a mortgage, and not a deed. But, where there is more than one instrument (that is to say, where there is an instrument to reconvey and a lease executed simultaneously with the execution of the deed of conveyance), these instruments must be carefully considered, and their purpose ascertained; and while they do not, as documents, change the rule of evidence with respect to the construction to be given to the facts connected with the transaction, nevertheless the terms of such instruments are to be considered as a circumstance in the case, to be given such weight by the court as they appear to deserve in view of all the other circumstances of the case; so that where there is an absolute deed of conveyance, and in connection with that instrument, and about the same date, there is executed an agreement to sell, and a lease to the grantor, it is the duty of the court to give careful consideration to such instruments, in connection with whatever circumstances there may be in the case, to determine whether or not the presumptions of the deed have not been overcome, and a presumption obtained in favor of a mortgage; and if it should appear to the court, in this aspect of the case, that there is a question of doubt as to whether the conveyance is a conditional sale or a mortgage, some of the cases undoubtedly establish the doctrine that the doubt should be given in favor of the construction of such a conveyance as being a mortgage, rather than a conditional sale, and in that view I concur. We have here in this case a deed absolute on its face, dated November 17, 1879; an agreement for a reconveyance, dated November 18, 1879; and a lease of the premises of the latter date for the term for which the contract was to exist; and all filed for record at about the same time. It is contended on behalf of the defendant that the presumption and the circumstances in connection with these various instruments show that these instruments constituted a mortgage. In support of this contention, he refers to a number of circumstances; among others, first, that the defendant had been living on the premises for some time prior to the transaction. The presumptions of a sale would, however, apply with equal force to this circumstance. If the grantor were selling the land absolutely, intending to leave it and go elsewhere, the fact that he was residing on the premises, or had been living there for a number of years, would not necessarily give any different construction to the instrument of conveyance. Whether it should be considered a mortgage or a deed because a person abandons his premises, leaves his home, and sells his property, is manifestly a question to be determined—in this country, at least—by other circumstances.

Again, it is said that the conveyance was made on an application for a loan. It is the fact that this conveyance was made upon an application made by Mr. Craig to Mr. Cowell for a loan of the amount of money required to redeem the property from a foreclosure sale, but that circumstance alone is not sufficient to give character to the transaction. We must look to all the surrounding circumstances connected with the case. If, for instance, a person

desired to improve his place, or to enlarge it, or if, living in the San Joaquin valley, he desired to bring water from a distance for the purpose of irrigation, and to enable him to incur the expense he should seek a loan, and should make a conveyance of his property, taking a lease and an agreement for a reconveyance, the transaction, in view of all the circumstances, would have the appearance of a mortgage, even though the consideration was nearly the value of the place. Under such circumstances, the fact that the loan was obtained for the purpose of improving the place, in the way of new buildings, or for bringing in water, or enlarging its capacity or capabilities as a farm, would tend to show that the transaction was a mortgage, and that the loan of the money was on the premises, to be repaid and to be secured as a mortgage. But in this case the application for the loan was for the purpose of redeeming the place from foreclosure proceedings. The place had been mortgaged, and the mortgage debt had not been paid; and proceedings for foreclosure had been carried to a judgment and sale, and the time for redemption had about expired. This is a circumstance for the court to consider. The mortgage value of the premises appears to have been nearly exhausted for a loan of six or seven thousand dollars. It is to be presumed that Craig would have paid this mortgage when it became due, if he could have borrowed the money, and paid it rather than to have incurred the expense attending on foreclosure proceedings. Therefore the circumstance that there was an application for a loan, considered with the other circumstances in the case, would rather tend to show, it seems to me, that it was a sale, and not a mortgage, because, as I have just remarked, the place had been mortgaged, the foreclosure proceedings were being carried to a conclusion; and, while the application for the money was as a loan, it may be said that Craig obtained it only by a conditional sale of the property.

It is said, furthermore, that the defendant valued the premises at a larger sum of money than the consideration of the deed, to wit, $10,000. This circumstance would be of some significance if it appeared that the property was in fact of that value, because, in cases of this kind, where the money loaned is in no proportion to the value of the premises,—as, for instance, the premises being of great value, and the amount of money loaned is small,—that is a significant circumstance tending to show that the transaction was a mortgage and not a sale. A man is not presumed to sell his property for very much less than what it would be valued at in the market. Now, while it is true that the defendant may possibly have valued the place at $10,000, it does not appear that any one else so valued it, or that the valuation was above the amount involved in the foreclosure proceedings. The foreclosure proceedings were to satisfy a debt which did not originally much exceed $6,000, or about that amount, and the consideration of the deed was therefore very nearly the value of the premises. This circumstance, instead of being one tending to show that the conveyance was a mortgage, rather tends, in my judgment, to show that it was a deed of conveyance.

There is a circumstance urged on the attention of the court, that the Craigs advanced about $2,000 in the redemption proceedings in addition to the $5,000 paid by Cowell. This is a circumstance, unquestionably, in favor of the claim that the transaction was a mortgage, and a circumstance which, if connected with other circumstances of a like import, would be very significant. The question is as to whether that fact, standing alone, is sufficient. I think it has some value, and should be considered; but whether it is sufficient to give character to the transaction can only be determined in the light of all the other facts in the case.

It is urged, also, that the reconveyance was to be made for the precise amount shown to be the consideration for the deed. I am unable to understand what significance there is in that fact, standing alone. The consideration of the deed was $5,000. The amount that was to be paid on the repurchase was therefore, necessarily, the same sum of $5,000. That was the amount of the transaction. That is all that can be said, unless we should assume that Mr. Cowell had gone into this transaction for the purpose of making money by the purchase of the property, by its resale three years after. But I do not understand Mr. Cowell had in view any profit on the advance of the real estate. It was a purchase by him for $5,000. He appears to have believed that that amount was about the value of the property, and that it would be sold probably for that amount at any time within three years, and he gave Mr. Craig the option of buying it back at that price. Meantime, Craig would have to pay the rent of $50 a month, which would be the equivalent of 1 per cent. interest on $5,000.

It is said another circumstance to be considered is that the premises continued in the possession of the mortgagor. But it was so continued under a lease. The mortgagor had leased the premises for the term of three years. If I determine that this was a conveyance absolute, then the fact that the grantor continued in possession was simply the fact that he continued in possession as the lessee. The significance of the occupation is the significance of the original transaction, whatever that may be, and I do not see that the fact that the grantor continued in possession had any other relation to the subject of inquiry. If the transaction was a mortgage, then Craig continued in possession under the agreement. If it was a deed, he was in possession under his lease.

The rent was made equivalent to the interest on the consideration of the deed. That fact has some significance. The interest was to be 1 per cent. per month on $5,000, or $50 a month, and that was the rent of the premises. This last circumstance, and the one that Craig advanced $2,000, appear to be the two circumstances in this case which to my mind have some tendency to establish the conveyance as a mortgage, and these two circumstances appear to be about all there is in the case to support that view of the transaction. Are these two circumstances sufficient? What are the facts that tend to show that the transaction was a sale of the property?

Commencing again, and reviewing the facts in the case from the other standpoint, what do we find? Mr. Cowell was a man of

means, and had a large experience in the transaction of business involving the buying and selling of land. We find, when applied to by Craig for a loan, that Cowell went upon the premises and examined their value. He knew that the place had gone to sale on the foreclosure proceedings for an amount of about $6,000, or a little more. It must have appeared to him that the mortgage value of the place had been exhausted for any sum about that amount, and that its only value to him would be as a purchaser; that there was not enough margin for him to take a mortgage on it; that the only way in which he could be secured would be to take a deed for the place, own it, and give Craig the right to repurchase it within a given time. In that connection is the circumstance which I referred to a while ago, that the consideration of the deed was about the value of the premises. In the case of Coyle v. Davis, 116 U. S. 108, 112, 6 Sup. Ct. 314, 316, the court said:

"Great stress is laid, in cases of this kind, on inadequacy of consideration, where there is a considerable disproportion between the price paid and the real value of the property. There is testimony on both sides on the question of disproportion in this case. But the preponderance is very large on the part of Davis that the share of Coyle in the property was sold for about its sale value, in view of its conditions."

This circumstance was considered in that case as tending to establish a sale, and the same interpretation may be given to the like circumstance in the present case.

There is another significant fact which must be considered, and that is, there was no agreement on the part of Craig to pay the amount of the loan, if we are to treat this transaction as a mortgage. He made no agreement whatever with Cowell to pay in any event upon a reconveyance. In Henley v. Hotaling, 41 Cal. 22, 28, Mr. Justice Rhodes said:

"A mortgage is a security for the performance of an agreement, which is usually to pay a sum of money. Leaving out of view other agreements than those for the payment of money, it is essential that there be an agreement, either express or implied, on the part of the mortgagor, or some one in whose behalf he executes the mortgage, to pay to the mortgagee a sum of money."

To the same effect is Slowey v. McMurray, 27 Mo. 113. And see, also, the observations of Lord Chancellor Manners in Goodman v. Grierson, 2 Ball. & B. 274, as to the mutual and reciprocal remedies in a mortgage agreement.

In this case, as I understand the transaction, Craig was not, in terms, required to pay the purchase price in any event. If he wanted the property, he was privileged to pay the $5,000 and interest, or rent, but he did not obligate himself to purchase the property from Cowell. The latter agreed to sell to Craig for $5,000 and interest from November 18, 1879, but it was a matter wholly optional with Craig whether he would purchase or not. Suppose Craig had been a man of means, and this property had depreciated in value; what recourse had Cowell for this loss? The risk appears to have been all on the side of Cowell.

The other circumstances in the case to be considered are the terms

79 F.—44

of the crop mortgage given to Cowell by Craig. The first crop mortgage, dated May 15, 1880, recites that the property is under lease from Cowell to Craig. The second crop mortgage, dated May 18, 1881, executed by Craig, but not by Cowell, on account of erroneous consideration, recites the conveyance to Cowell and the lease to Craig. The second crop mortgage, executed by both parties, is dated August 1, 1881, and recites that the property is owned by Mr. Cowell and leased to Craig. The latter recital is an express declaration on the part of Craig that Cowell owned the property, and that Craig was the lessee,—an admission that the conveyance to Cowell was an absolute deed, and not a mortgage. There is also the declaration to Sheriff Franks, under circumstances that would indicate Craig's understanding of the transaction. It appears that Craig declared to Mr. Franks, then sheriff of Monterey county, that this property was owned by Cowell. The declaration was made when it was necessary for the sheriff to know who was the real owner of the premises. In the cases I have had occasion to examine, I find that declarations of this character have been considered by the court as a very strong circumstance—almost a controlling circumstance—in the case. But perhaps the most significant circumstance in this case is the insolvency proceeding commenced by Craig in the superior court August 7, 1880. In the petition he enters into some considerable detail with respect to this land, its ownership by Cowell, the lease to Craig, the terms of the lease, the conditions under which he held the property, and the interest that he had in the premises. Not only that, but, when a contest was presented by a creditor against Craig's discharge, he comes into court and answers the contest, and further declares, still more emphatically, if possible, that this property is owned by Cowell; showing that the deed that he gave was an absolute deed, and that it was not a mortgage. It is said in explanation of these declarations that Craig is an ignorant man, illiterate, and cannot read or write; that these declarations were in fact only the declarations of his attorney. This is a circumstance to be considered, but I am in doubt as to what weight should be given to the fact. I think the experience of most people is that persons who are unable to read or write are quite as particular and careful about their business transactions as people who do read and write. Where persons are able to read and write, they are often disposed to pass over written documents without critical examination, but a person who cannot read or write is usually very careful to have documents read over and explained. I did not discover anything in the appearance or conduct of Mr. Craig on the stand to indicate that he was unable to look after his own interests. In some respects he seemed to behave himself with as much shrewdness, judgment, and caution as some of the witnesses on the other side of the case. I thought he showed a fair ability in comprehending the intricacies of this case, and his relations to the facts as they were developed. So, indeed, did Mrs. Craig. While they were both illiterate, it appeared to me they had all the natural shrewdness usually associated with people in their condition. I cannot, therefore, conclude that the fact that these defendants could neither read nor write should be taken as evidence that they did not know the legal sig-

nificance of all these proceedings relating to this property.    I think the insolvency proceedings must necessarily have been explained to Craig.    The petition appears to have been presented to the superior judge, John K. Alexander, who was the attorney that prepared and was familiar with the original conveyance and the other instruments connected with that transaction.    The certificate attached to the petition indicates that it must have been brought to the attention of the judge, who, knowing the character of the original transaction, would hardly have permitted Craig to go on record with a document that was untrue, and particularly where it contained declarations against his interest.    If, therefore, Craig's declarations in the insolvency proceedings are true, there is no question but that he understood that the deed was an absolute sale, and that this property was owned by Cowell after November 17, 1879.

The next circumstance to be considered is that of the tender.    This document was prepared by Mr. Rodgers as attorney for Craig, and is dated December 30, 1882.    It seems to be as strongly in favor of the claim that the conveyance was an absolute deed as the proceedings in insolvency.    It seems to me that in these latter proceedings Craig and his attorney, Rodgers, looked upon the conveyance as a deed, and treated it as a deed absolute, and that Craig's rights under it were such that they could only be secured by acting in accordance with its express terms, as a sale, and not as a mortgage.

Upon all these facts, and others which might be referred to, but which I will not now recite, I have arrived at the conclusion that the evidence in this case establishes the fact that this conveyance, a deed absolute on its face, was in fact a deed of conveyance, and that the transaction was a conditional sale of the property, and was not a mortgage.    I will therefore direct judgment to be entered in favor of the plaintiff.