[No. 5478.   Decided March 4, 1905.]

JAMES F. CONNER, *Respondent*, v. JAMES M. CLAPP et al., *Appellants*.[1]

MORTGAGES—ADVANCE TO PURCHASE PROPERTY—ABSOLUTE DEED WITH BOND FOR DEED—REFORMATION. Where the plaintiff held an option for the purchase of property and applied to the defendants for a loan secured by mortgage thereon, which was refused, but defendants did advance the money except $1,000, upon a deed executed to them, and gave plaintiff a bond for a deed in consideration of said sum of $1,000 which was advanced by the plaintiff, the transaction is not a mortgage whereby the land is held as security for the advance, and plaintiff is not entitled to redeem therefrom as such, and this, independently of whether the bond for a deed imposed the obligation on him to repay the advance.

SAME—APPEAL AND ERROR—DECISION—THEORY OF TRIAL—REMAND—PLEADINGS—AMENDMENT AFTER REVERSAL. In an action to have a deed to defendants and a bond for a deed to plaintiff, declared a mortgage, in which action the rights of the plaintiff were tried upon the mortgage theory, the supreme court is unable to determine the plaintiff's rights under his bond for a deed, and, in reversing the case, will remand with directions to have such rights determined under amended pleadings without the commencement of another action.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered July 23, 1904, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, decreeing an absolute deed to be a mortgage.   Reversed.

[1]Reported in 79 Pac. 929.

*J. B. Bridges* and *Ben Sheeks,* for appellants.

*C. M. Hodgdon* and *S. M. Heath (G. C. Israel,* of counsel), for respondent.

RUDKIN, J.—On the 14th day of February, 1901, one Andrew Bruce was the owner of the property in controversy in this action.    On that day Bruce, in consideration of the sum of $950, granted the plaintiff in this action an option to purchase said property, upon the payment of the sum of $6,500, at any time within ninety days from the date of the option.    On the date of the expiration of this option, the property in question was conveyed by warranty deed from Bruce to defendant J. M. Clapp, and on the 16th day of July, 1901, the defendants Clapp and wife executed to the plaintiff a bond for a deed, whereby said defendants agreed to convey said property to the plaintiff in this action, provided he should pay them therefor the sum of $6,500, on or before the 1st day of December, 1901.  This action was brought for the purpose of declaring the deed to J. M. Clapp, and the bond for a deed from Clapp and wife to the plaintiff, a mortgage, and to enforce the right of redemption.    The plaintiff had judgment in the court below, and the defendants Clapp and wife appeal therefrom.

The principal question involved in this appeal is this, was the deed from Bruce to J. M. Clapp, and the bond for a deed from Clapp and wife, intended as a mortgage, or given as security for the payment of a debt, or were they what they purported on their face to be ?   Before a deed absolute in form can be declared to be a mortgage, it must appear that such was the intention of the parties thereto, and that such intent existed at the time of the execution of the instrument, or that the deed was given as security. There is no substantial conflict in the testimony as to what transpired prior to the execution of the deed in question.

The conflict relates to conversations had, or admissions claimed to have been made, subsequent to the execution of the deed.

The facts are substantially these: The respondent had an option to purchase the property in question, which would expire on the 14th day of May, 1901. Some two weeks prior to that date, he applied to one Stockwell to obtain a loan for him from one Weinhard, of Portland, Oregon, to enable him to take up the option before it expired. Stockwell failed in this, and the respondent likewise failed in his efforts to obtain the necessary funds from other parties with whom he had been negotiating. Stockwell spoke to the appellant J. M. Clapp about the matter some time prior to May 14, 1901, but said appellant refused absolutely to make a loan on the property, or to take a mortgage thereon, as the property was already incumbered by a prior mortgage in the sum of $3,500. The appellant J. M. Clapp intimated, however, that, if his wife were willing, he might advance the money himself and take a deed to the property in his own name, and execute a bond for a deed to the respondent for a period of six months, provided the respondent would advance the sum of $1,000 on account of such bond for a deed. Stockwell informed the respondent of this offer, but it was not satisfactory to him, and he continued his efforts to raise the funds elsewhere. Two days before the expiration of the option, the respondent notified Stockwell to obtain the money from the appellant J. M. Clapp, on the terms which he had theretofore intimated. Stockwell applied to the appellant J. M. Clapp, and said appellant sent him the sum of $2,000, to be applied on the purchase. Stockwell advanced for the respondent the sum of $1,000, which the respondent was to pay the appellants on account of the bond for a deed. These two amounts, together with the mortgage

of $3,500 already against the property, made up the pur-
chase price of $6,500.    $3,000 was paid to Bruce, and a
deed executed to the appellant J. M. Clapp, on the 14th
day of May, 1901, and on the 16th day of July, 1901, the
appellants executed a bond for a deed to the respondent
as heretofore stated. The deed to the appellant J. M.
Clapp, and the bond for a deed from the appellants Clapp
and wife to respondent were in fact a part of the same
transaction, though executed on different dates.    No com-
munication of any kind passed between the appellants and
the respondent, prior to the payment of the money and the
execution of the deed.    All negotiations were conducted
between the respondent and Stockwell on the one hand, and
between Stockwell and the appellant J. M. Clapp on the
other.    There is some question between counsel as to whom
Stockwell represented in these negotiations.    Unquestion-
ably Stockwell was the agent of the respondent, in his ef-
forts to obtain the money to take up this option.    There
is nothing in the record to show that Stockwell was the
agent of the appellants, or represented them in any way, up
to the time the money was paid over and the deed obtained
from Bruce.    The letter transmitting the money, under
date of May 14, 1901, is as follows:

"Westport, Wash., May 14, 1901.

"Mr. A. P. Stockwell, Aberdeen, Wash.    Dear Sir:—
Inclosed are two checks of mine, one on P. S. Nat. Bank
of Seattle, $400; one on Standard Bank of Canada,
$1,600; total, $2,000; made payable to your order and are
to be applied in the matter of the Bruce & Lamb property
purchase.    As I am unable to be in the harbor on this date
I leave this solely to you, and of course shall expect you
will guard my interests as your good judgment may direct.
The above amount, $2,000, is given for a deed to the Bruce
and Lamb corner in Hoquiam spoken of, with the under-
standing that the only indebtedness against it at the time
deeds are made out is a mortgage held by Peter Autzen

of Hoquiam, principal and interest on which does not exceed $3,500. As stated by you, Autzen desires that $1,000 be paid him as soon as deeds are executed. This I will be able to do in course of a month or six weeks when new mortgage can be made out.

"I am willing to execute a bond for deed to James Conner, or to whom he may direct, for a period not to exceed six months, provided he puts up a thousand dollars for the privilege; (this I understood you to say you would arrange for him) and you are hereby authorized to have the necessary papers prepared and I will so execute them. Should Conner not purchase at the end of six months, I will be willing to refund his thousand dollars by allowing him to pay me a rental equivalent of one-half the real rental, until the $1,000 will have been absorbed, say at the rate of $50 per month. In the mean time Conner is to pay all assessments which may be levied against the property, and to pay all taxes. He is also required to pay for the insurance against fire, for an amount consistent with the rules adopted by insurance companies as a limit to be carried.

"I think the rate of 10 per cent required by Autzen rather high, especially as the mortgage will have been reduced by nearly 30 per cent and the security for his $2,500 ample to warrant a reduction of interest; however if he insists I will pay 10 per cent for the six months, and by that time will have made arrangements to get a new long time loan, provided Conner does not live up to the terms of the bond. I will try Arch Campbell, and it may be that I can get the funds from him and pay Autzen off right away. I understand Campbell loans money at 8 per cent.

"The above enumeration of conditions is simply a rehearsal of our conversation and agreement as I understood them, and are here outlined to state my acceptance and yours, acting for Conner, of them. I expect to be in Aberdeen some time next week and will see you then.

"2 checks enclosed. Yours truly,      J. M. Clapp."

Counsel attempt to cast some doubt upon this letter, but we think it is clearly established that the letter was written as claimed, and was transmitted with the funds used to

complete the purchase.    It is also clearly established that
the appellants refused absolutely to loan the money upon
the property, or to take a second mortgage as security.
These facts, together with the further fact that the deed
and bond for a deed were executed in conformity to the
directions contained in the above letter, and the fact that
the appellants assumed the first mortgage in their deed,
and afterwards paid $1,000 thereon, and executed a new
note and mortgage for the balance, leave no room to doubt
that the transaction was in fact such as the appellants
claimed.

These undisputed facts cannot be overthrown by mere
general statements that the transaction was a loan of
money, or that the property was taken as security.    The
property was, in one sense, a security.    The appellants
had no interest therein except to transfer it to the re-
spondent, upon the return of the money advanced by them,
with interest, within the time provided in the bond for a
deed, provided the terms of the bond were complied with.
Nevertheless, these instruments were executed in their
present form deliberately and intentionally.    They con-
stituted the only form of security that the appellants would
take or consider, and to place any other construction upon
them is to do violence to the intention of the parties, and
set aside their contract, making a new one in lieu thereof.
The respondent had an option on certain property, which
was about to expire.    The appellants refused to make a
loan on the property, or to take a mortgage as security,
but agreed to advance the money to take up the option,
take title to the property in their own name, and to convey
it to the respondent upon the terms and conditions set
forth in the bond for a deed.    These facts are clearly
established by the testimony, and bring this case within
the decisions of this court in *Dignan v. Moore,* 8 Wash.

312, 36 Pac. 146; *Swarm v. Boggs*, 12 Wash. 246, 40 Pac. 941; and *Reed v. Parker*, 33 Wash. 107, 74 Pac. 61.

In *Dignan v. Moore, supra,* the court says:

"If we should sustain the contention of the appellants, under the facts disclosed by this record, it would be in effect to hold that two persons standing upon an equal basis are incompetent to make a contract by which one of them shall sell to the other real estate, and make a deed thereto which shall be absolute as between the parties, and at the same time agree that the grantor in said deed shall have the right to repurchase the property sold. We are not prepared so to restrict the power of competent persons to control their property and contract in regard thereto."

In *Swarm v. Boggs, supra,* the court says:

"When the instrument is construed in connection with the circumstances surrounding its execution, as shown by the agreed statement of facts, it appears beyond question that the parties did not intend such instrument as a mortgage, but, on the contrary, intended that thereby the absolute title should pass from the grantors to the grantee, with the right in the grantors to repurchase in accordance with the conditions stated in the instrument. And since the rule under which a deed was held to be a mortgage was originated, that the real intent of the parties should be given force, the language of the instrument should not be nullified unless it is shown that it did not correctly interpret the intention of the parties."

The appellants further contend that there was no obligation on the part of the respondent to repay the money, and that hence there could be no mortgage. It is not claimed that such obligation was imposed otherwise than by the bond for a deed. This bond was not signed by the respondent, and the question of his liability to pay the purchase price by reason of the bond alone is a very serious one, which we do not deem it necessary to decide in this case, as we hold the transaction cannot be construed to be a mortgage, independently of the question whether there

was a subsisting obligation to pay the purchase price, at the time of the execution of the deed and the bond for a deed.

Some question is raised as to the time of the tender, the sufficiency of the tender, and the form of the judgment; but, in the view we have taken of the case, these questions become immaterial. The case was tried below, and in this court, on the mortgage theory, and inasmuch as the judgment cannot be sustained on that ground, it cannot be sustained at all. The rights of the respondent, if any, exist under the bond for a deed, and are fixed by that instrument, and not by the law of mortgages. The case was not prosecuted or defended in the court below with a view of determining the rights of the respondent under his bond for a deed, and, under the testimony in the case, this court is unable to pass upon that question, or render a final judgment herein. We think, however, that any rights the respondent may have under his contract of purchase should be determined in this action, without the necessity or expense of another action.

The judgment of the court below is therefore reversed, and the cause remanded for further proceedings, not inconsistent with this opinion. The parties will be permitted to amend their pleadings, if they so desire, and the court will thereupon determine the rights of the respondent under his bond for a deed, if any, and will take further testimony for that purpose.

MOUNT, C. J., FULLERTON, HADLEY, and DUNBAR, JJ., concur.

ROOT and CROW, JJ., took no part.