[No. 9317. Department One. October 9, 1911.]

CURTIS M. JOHNSON *et al.*, *Respondents*, v. NATIONAL BANK OF COMMERCE OF TACOMA, *Appellant.*[1]

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—PRESUMPTIONS—EVIDENCE. Where a mortgagor deeds the mortgaged premises to the mortgagee, taking back a lease with an option to purchase the property at the end of the term, the notes and mortgage being canceled, there is no presumption that the deed was intended as a mortgage, but clear and convincing evidence is required to overthrow the presumption that the written instruments are what they purport to be.

MORTGAGES — ABSOLUTE DEED AS MORTGAGE — EVIDENCE — SUFFICIENCY. A warranty deed of mortgaged premises to the mortgagee, a bank, by the mortgagor, who took back a lease with an option to purchase the property at the end of the term, is not shown by clear and convincing evidence, to have been intended as a mortgage, and findings to that effect are not sufficiently supported by testimony of the mortgagor that it was agreed that the deed should be the same as a mortgage in order to satisfy the bank examiner, that he gave a new note for the amount of the indebtedness at that time and that the property was worth twice the amount of the indebtedness, where his testimony was contradicted by the other witnesses, letters from the bank demanding "interest" and the bank books indicating that. the matter had been carried as a loan instead of real estate were satisfactorily explained, and the trial court found that no new note

[1]Reported in 118 Pac. 21.

was given, and after the burning of a mill on the property, the mortgagor abandoned the property after expiration of the option, giving no heed to the maturity of payments due to perfect title, or to notice from the bank that he could have a reasonable time to effect a sale of the property.

SAME. In such a case the disparity between the amount of the indebtedness and the value of the property is not such as to lead to the conclusion that the deed was intended as security, where a number of experts testified that the property had no market value when the deed was given, the value being at that time less than the indebtedness, and the property was sold about nine years later in good faith for $16,000, the indebtedness amounted to $15,000, although the trial court found, upon the testimony of other witnesses, a disparity of about $8,000 at the time the deed was given, which had greatly increased by enhanced value of the real estate after a period of financial depression.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered August 24, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for equitable relief. Reversed.

*Ellis, Fletcher & Evans* and *F. S. Blattner*, for appellant.

*William P. Reynolds* and *Bates, Peer & Peterson*, for respondents, contended, among other things: In doubtful cases the court leans to the conclusion that the transaction was a mortgage and not a conditional sale. *Collins v. Denny Clay Co.*, 41 Wash. 136, 82 Pac. 1012; *Edrington v. Harper*, 3 J. J. Marsh. 353, 20 Am. Dec. 145; *White v. Redenbaugh*, 41 Ind. App. 580, 82 N. E. 110; *Hughes v. Harlam*, 166 N. Y. 427, 60 N. E. 22; *Barnett v. Williams*, 31 Ky. Law 255, 101 S. W. 1191; *Matthews v. Sheehan*, 69 N. Y. 585; *Tucker v. Witherbee* (Ky. Law), 113 S. W. 123; *Wilson v. McWilliams*, 16 S. D. 96, 91 N. W. 453; *Baird v. Reininghaus*, 87 Iowa 167, 54 N. W. 148; *Russell v. Southard*, 12 How. 139; *Poindexter v. McCannon*, 1 Dev. Eq. (N. C.) 373, 18 Am. Dec. 592; *Keithley v. Wood*, 151 Ill. 566, 38 N. E. 149, 42 Am. St. 265; *Mears v. Strobach*, 12 Wash. 61, 40 Pac. 621; *Longuet v. Scawen*, 27 Eng. Rep. Reprint

1106. Among the facts of controlling importance are, first: Did the relation of debtor and creditor exist before and at the time of the transaction, or, if not, did the transaction commence in a negotiation for a loan of money? *Rose v. Gandy*, 137 Ala. 678, 34 South. 239; 1 Jones, Mortgages (5th ed.), § 266. Second: Was there great disparity between the value of the property and the consideration passing for it? *Rockwell v. Humphrey*, 57 Wis. 410, 15 N. W. 394. Third: The fact that interest was paid as interest and not as rent and which the bank considered interest and demanded as such. 1 Elliott, Evidence, § 225, 1 Jones, Mortgages, § 273; Pomeroy, Equity Jurisprudence (5th ed.), §§ 811, 813, 818, 820; *Bentley v. Phelps*, Fed. Case, No. 1,331. Fourth: The fact that there was a great disparity between the rental value of the property and the interest paid. *Bentley v. Phelps, supra; Rogers v. Davis*, 91 Iowa 730, 59 N. W. 265; *Flagg v. Mann*, Fed. Case, No. 4,847. Fifth: The fact that respondents remained in possession. Jones, Mortgages, § 328. Sixth: Allowing the respondents to rebuild the mill at a cost of $15,000 at a time when there was no defeasance creates an estoppel. *Jones v. Gillett*, 142 Iowa 506, 118 N. W. 314, 121 N. W. 5; *Dabney v. Smith*, 38 Wash. 40, 80 Pac. 199. Seventh: Insisting that respondent pay special street assessments further estops appellant from asserting title. Jones, Landlord and Tenant, 397; *Austin v. Seattle*, 2 Wash. 667, 27 Pac. 557; *In re Hun*, 144 N. Y. 472, 39 N. E. 376; *McVickar & Gaillard Realty Co. v. Garth*, 97 N. Y. Supp. 640; *Beals v. Providence Rubber Co.*, 11 R. I. 381, 23 Am. Rep. 472; *Bolling v. Stokes*, 2 Leigh (Va.) 178, 21 Am. Dec. 606. Where there is a direct conflict in the oral testimony of the parties to a contract, with respect to what was intended thereby, the correspondence and writings between them, both before and after it was made, become of paramount importance, and, if pertinent, are controlling. 1 Moore, Facts, § 12; 1 Powell, Mortgages, 16; Id., 374; *Toppan Co. v. McLaughlin*, 120

Fed. 705; *Walmsley v. Griffith,* 10 Ont. App. 327; *Hart v. Ten Eyck,* 2 Johns. Ch. (N. Y.) 62; *Wallace v. Johnstone,* 129 U. S. 58; *Bogk v. Gassert,* 149 U. S. 17; *Runyon's Adm'r v. Pogue,* 19 Ky. Law 940, 42 S. W. 910; *Blake v. Taylor,* 142 Ill. 482, 32 N. E. 401; *Barber v. Lefavour,* 176 Pa. St. 331, 35 Atl. 202; *Reynolds v. Reynolds,* 42 Wash. 107, 84 Pac. 579; *Hesser v. Brown,* 40 Wash. 688, 82 Pac. 934; *Henley v. Hotaling,* 41 Cal. 22; *Perot v. Cooper,* 17 Colo. 80, 28 Pac. 391, 31 Am. St. 258; *Baird v. Baird,* 48 Colo. 506, 111 Pac. 79; *Sullivan v. Woods,* 5 Ariz. 196, 50 Pac. 113; *Sadler v. Taylor,* 49 W. Va. 104, 38 S. E. 583; *Adams v. Pilcher,* 92 Ala. 474, 8 South. 757; *Dignan v. Moore,* 8 Wash. 312, 36 Pac. 146; *Swarm v. Boggs,* 12 Wash. 246, 40 Pac. 941; *Neeson v. Smith,* 47 Wash. 386, 92 Pac. 131; *Conner v. Clapp,* 37 Wash. 299, 79 Pac. 929; *Reed v. Parker,* 33 Wash. 107, 74 Pac. 61; *Thorne v. Joy,* 15 Wash. 83, 45 Pac. 642; *Miller v. Ausenig,* 2 Wash. Ter. 22, 3 Pac. 111; *Snyder v. Parker,* 19 Wash. 276, 53 Pac. 59, 67 Am. St. 726; *Borrow v. Borrow,* 34 Wash. 684, 76 Pac. 305; *Plummer v. Ilse,* 41 Wash. 5, 82 Pac. 1009, 111 Am. St. 997, 2 L. R. A. (N. S.) 627; *Kerr v. Gilmore,* 6 Watts (Pa.) 405; *Dickinson v. Oliver,* 195 N. Y. 238, 88 N. E. 44; *King v. King,* 24 Eng. Rep. Reprint, 1100; *Ferris v. Wilcox,* 51 Mich. 105, 16 N. W. 252, 47 Am. Rep. 551; *Turnipseed v. Cunningham,* 16 Ala. 501, 50 Am. Dec. 190; *Marshall v. Thompson,* 39 Minn. 137, 39 N. W. 309; *Niggeler v. Maurin,* 34 Minn. 122, 24 N. W. 369; *Holridge v. Gillespie,* 2 Johns. Ch. (N. Y.) 33; *Holmes v. Grant,* 8 Paige (N. Y.) 243; *Clark v. Henry,* 2 Cowen (N. Y.) 324; *Hone v. Fisher,* 2 Barb. Ch. (N. Y.) 559. There is a distinction between this case and one based on an oral agreement, the degree of proof being different; and the court should favor the right to redeem and construe it to be a mortgage, if there is any doubt as to the intention. Jones, Mortgages, § 279; 2 Current Law, 912; *Smith v. Jensen,* 16 N. D. 408, 114 N. W. 306; *Mitchell v. Wellman,* 80 Ala. 16; *Turner v.*

*Wilkinson,* 72 Ala. 361; *McNeill v. Norsworthy,* 39 Ala.
156; *Conway's Ex'rs v. Alexander,* 7 Cranch 217; *Secrest
v. Turner,* 2 J. J. Marsh. (Ky.) 471; *Crane v. Bonnell,* 2
N. J. Eq. 264; *Peugh v. Davis,* 96 U. S. 332; *Brick v. Brick,*
98 U. S. 514; *O'Neill v. Capelle,* 62 Mo. 202; *Trucks v.
Lindsey,* 18 Iowa 504; *Rockwell v. Humphrey,* 57 Wis. 410,
15 N. W. 394; *Snavely v. Pickle,* 29 Gratt. (Va.) 27; *Holton
v. Meighen,* 15 Minn. 69; *Rich v. Doane,* 35 Vt. 125; *Bacon
v. Brown,* 19 Conn. 29; *Klein v. McNamara,* 54 Miss. 90.
The statute of limitations has no application.    4 Sutherland,
Damages (3d ed.), § 1112; *Parker v. Dacres,* 2 Wash. Ter.
439, 7 Pac. 893; *Krutz v. Gardner,* 25 Wash. 396, 35 Pac.
771; *Catlin v. Murray,* 37 Wash. 164, 79 Pac. 605; *Invest-
ment Securities Co. v. Adams,* 37 Wash. 212, 79 Pac. 625;
*Mooney v. Byrne,* 163 N. Y. 86, 57 N. E. 163; *Meehan v.
Forrester,* 52 N. Y. 277.    Respondents' measure of damages
was the value of the property at the time of the trial.    Perry,
Trusts (3d ed.), § 844; *May v. Le Claire,* 11 Wall. 217;
*Van Dusen v. Worrell,* 4 Abb. Ct. App. Dec. (N. Y.) 473;
*Miller v. McGuckin,* 15 Abb. N. C. 204; *Enos v. Sutherland,*
11 Mich. 538; *Budd v. Van Orden,* 33 N. J. Eq. 143; *Id.,*
33 N. J. Eq. 564; *Ivie v. Ivie,* 26 Eng. Rep. Reprint, 274;
*Pocock v. Reddington,* 31 Eng. Rep. Reprint, 862; *Powlet
v. Herbert,* 30 Eng. Rep. Reprint, 352; *Mixon v. Miles,* 92
Tex. 318, 47 S. W. 966; *McCord v. Nabours,* 101 Tex. 494,
109 S. W. 913, 111 S. W. 144; *Boothe v. Fiest,* 80 Tex. 141,
15 S. W. 799; *Galigher v. Jones,* 129 U. S. 193; *Doty v.
Norton,* 117 N. Y. Supp. 793; *Haussknecht v. Smith,* 42
N. Y. Supp. 611.

GOSE, J.—This is a bill in equity, prosecuted by the sur-
viving husband and heirs and the administrator of the estate
of Emma M. Johnson, deceased, for the purpose of having a
deed, lease, and option of purchase decreed to be a mortgage,
for an accounting and redemption, or in the alternative for
damages.    The case was dismissed as to the subsequent pur-

chasers of the property, the court finding that the property was purchased in good faith and without notice of any claim of right in the plaintiffs. Thereupon the court found that the transaction was intended to be a mortgage, and entered a judgment in favor of the plaintiffs for the difference between the value of the property at the time of the trial and the amount of the indebtedness, plus interest, taxes, assessments, etc. The defendant, the National Bank of Commerce, has appealed.

The essential preliminary facts are as follows: On September 12, 1892, the respondent Curtis M. Johnson, hereafter called the respondent, was indebted to the appellant in sums aggregating, with interest, $9,368.28, and upon that date executed to appellant his note for that amount, due in one year, bearing interest at the rate of ten per cent per annum, together with a mortgage upon the premises in controversy to secure the same. On September 18, 1893, he executed to the appellant a renewal note for the principal of such note, payable six months after date, with interest at 12 per cent per annum, with a mortgage on the same property to secure its payment. On the 1st day of March, 1897, he was indebted to the bank for the full amount of the principal of the note, together with unsecured notes sufficient to make his indebtedness on that date $14,000.

At the time of executing the real estate mortgages, he gave the appellant a chattel mortgage upon the machinery in the mill situate upon the mortgaged property as additional security. On March 1, 1897, Johnson and wife conveyed to the appellant the property covered by the real estate and chattel mortgages, by a deed of general warranty. The deed recites a consideration of $14,000. On March 3, 1897, and as a part of the transaction, the appellant executed to Johnson a lease of the conveyed premises for the term of three years from the 1st day of March, 1897. The lease recites that the appellant is the owner of the property. By the terms of the lease, Johnson agrees that he will "pay an-

nually as rent for said property the sum of eight hundred
and forty ($840) dollars," payable every sixty days during
the leasehold period; that he will pay all taxes due or to
become due during the continuance of the lease; that he will
keep the buildings and machinery insured in the sum of
$4,000, payable to the appellant in case of loss, the policies
to be assigned to it.   It is further agreed that in case of fire,
and the loss exceeds $4,000, the appellant shall have the
right to appropriate the insurance to the payment of the
loss "and declare this lease at an end, unless Johnson shall
pay the said sum of $14,000 or as much thereof as may re-
main at said time," provided, however, that if Johnson shall
furnish a sufficient sum of money within sixty days when
added to the insurance "to repair said loss entirely," then
the $4,000 insurance shall be used to replace the loss.   It is
further stipulated that if Johnson has kept his covenants at
the expiration of the lease, the appellant will, upon his pay-
ing the sum of $14,000, convey him the property, by a deed
containing covenants of warranty against all acts done or
suffered to be done by the appellant, and that Johnson
"shall not underlet said property without the consent" of the
appellant, and that in event the property "be underlet or sold
under legal process, this lease shall become void and of no
effect and shall terminate at once."   Both the deed and the
lease were filed for record on March 4th following their exe-
cution.   Between March 1st, 1900, and the 8th day of Jan-
uary, 1901, Johnson continued in possession of the property
under the terms of a parol agreement, paying the stipulated
rent.

On the last named date, the appellant again leased the
property to Johnson for the term of three years from the
first day of January, 1901.   This lease also recites that the
appellant is the owner of the property, and contains the
same provision against underletting and sale under legal
process as the first lease.   By the terms of this lease John-
son agrees to pay annually "as rent" for the property $840

for the first year, $780 for the second year, and $660 for the third year.   He further agrees to pay, "as part of the purchase price in addition to such rental," the sum of $1,000 at the end of the first year, $2,000 at the end of the second year, and $3,000 at the end of the third year.   This lease contains substantially the same provisions in relation to the payment of taxes, keeping the property insured, and the application of the insurance in case of fire as the first lease, except that it provides that the insurance shall be $5,000. It is further stipulated that if, at the expiration of the lease, Johnson has performed all his covenants, he "shall have the option to purchase" the property from the appellant upon paying it the sum of $8,000.   Upon the delivery of the deed, the appellant delivered all the notes to Johnson, and on March 4th following, satisfied the mortgages.   The satisfaction recites that the mortgage, "together with the debt thereby secured, is fully paid, satisfied and discharged." Substantially all the property in controversy is tide land. On March 4, 1897, and as a part of the transaction, Johnson assigned to the appellant a contract which he had with the state for the purchase and sale of the property.   On April 20, 1904, the appellant having made the final payment upon the tide land contract, the state conveyed the property to it. On October 30, 1905, the appellant entered into a contract for the sale of the property to a third party, and on February 6, 1906, it conveyed it to the purchaser.   The *bona fides* of this sale is not raised by the appeal.

The only question we need to consider is, Did the parties intend that the transaction should be a mortgage?   It is well settled that the character of the transaction is fixed at its inception and that it is what the intention of the parties makes it.   *Clambey v. Copland*, 52 Wash. 580, 100 Pac. 1031; 20 Am. & Eng. Ency. Law (2d ed.), 938; 1 Jones, Mortgages (3d ed.), § 263.   It is also well settled that when property is conveyed by a deed absolute in form, and there

is no defeasance or collateral agreement in writing, clear and convincing evidence must be produced to establish that the deed was given as security and was intended as a mortgage. *Reynolds v. Reynolds*, 42 Wash. 107, 84 Pac. 579; *Hesser v. Brown*, 40 Wash. 688, 82 Pac. 934; *Dabney v. Smith*, 38 Wash. 40, 80 Pac. 199; *Reed v. Parker*, 33 Wash. 107, 74 Pac. 61; *Swarm v. Boggs*, 12 Wash. 246, 40 Pac. 941; *Runyon's Adm'r v. Pogue*, 19 Ky. Law 940, 42 S. W. 910; 20 Am. & Eng. Ency. Law (2d ed.), 954; Jones, Mortgages (6th ed.), 335.

The respondents earnestly contend that where a mortgagor conveys the mortgaged property to the mortgagee by a deed absolute for the amount of the mortgage debt and takes from it a lease with an option to purchase for the same amount, with interest, the presumption arises that the parties intended the transaction to be a mortgage, and that the burden is cast upon the grantee to show by clear and convincing evidence that the parties intended the transaction to be a conditional sale. Many authorities are cited which, it is contended, support this view. A reading of these cases has convinced us that very few of them state the rule so broadly. It must, however, be admitted that a great many courts have announced the rule that courts of equity incline against conditional sales, and that when it is doubtful from all the attending circumstances whether a sale with a right to repurchase or a mortgage was intended, equity will construe the transaction to be a mortgage. Such rule is declared in *Turnipseed v. Cunningham*, 16 Ala. 501, 50 Am. Dec. 190; *Keithley v. Wood*, 151 Ill. 566, 38 N. E. 149, 42 Am. St. 265; *Cosby v. Buchanan*, 81 Ala. 574, 1 South. 898; *O'Neill v. Capelle*, 62 Mo. 202; *Rockwell v. Humphrey*, 57 Wis. 410, 15 N. W. 394, and *Edrington v. Harper*, 3 J. J. Marsh. 353, 20 Am. Dec. 145. They further say that the execution of a defeasance or collateral agreement by the grantor simultaneously with an absolute conveyance, the debt remaining

unpaid, will generally be held to stamp the transaction as a mortgage. They, however, concede that the intention of the parties, when ascertained, is controlling.

In *Smith v. Jensen*, 16 N. D. 408, 114 N. W. 306, cited by the respondents, commenting on the force to be given a contemporaneous agreement to reconvey, it is said:

"There is no absolute rule that the covenant to reconvey should be regarded, either in law or in equity, as a defeasance. The covenant to reconvey, it is true, may be one fact, taken in connection with other facts, going to show that the parties really intended the deed to operate as a mortgage, but standing alone it is not sufficient to work that result."

It is further said:

"In order to destroy the recitals in a deed or other contract, the proof must be clear, strong and convincing."

In *Rose v. Gandy*, 137 Ala. 329, 34 South. 239, cited by the respondent, it is said that when a conveyance is absolute and the controversy is whether the parties contemplated an unconditional sale or a mortgage, clear and convincing evidence is required by the party asserting that the transaction was intended as a mortgage; but that when the writing must be departed from to ascertain the true transaction, that is whether a repurchase or a redemption was intended, the rule is not so stringent. *Wilson v. McWilliams*, 16 S. D. 96, 91 N. W. 453, cited by the respondent, takes the view that to show that a deed absolute in form was intended as a mortgage to secure the payment of a debt, the evidence must be clear, satisfactory and convincing, but if from all the evidence a doubt arises as to whether the transaction is a mortgage or a conditional sale, the doubt must be resolved by holding the instrument to be a mortgage. In *Hughes v. Harlam*, 166 N. Y. 427, 60 N. E. 22, also cited by the respondent, it was held that an inspection of the writings showed the transaction to be a mortgage.

We think the better rule is that where there is a deed absolute in form, either with or without a contemporaneous agreement for a resale of the property, there being nothing upon the face of the collateral papers to show a contrary intent, the presumption of law, independent of evidence, is that the transaction is what it appears to be, and that he who asserts that the writing should be given a different construction, must show, by clear and convincing evidence, that a mortgage and not a sale with the right to repurchase was intended.    This rule has the support of at least two decisions of the supreme court of the United States.    *Wallace v. Johnstone*, 129 U. S. 58; *Bogk v. Gassert*, 149 U. S. 17.    In the former it is said:

"A deed of lands, absolute in form with general warranty of title, and an agreement by the vendee to reconvey the property to the vendor or a third person, upon his payment of a fixed sum within a specified time, do not of themselves constitute a mortgage; nor will they be held to operate as a mortgage, unless it is clearly shown, either by parol evidence or by the attendant circumstances, such as the condition and relation of the parties, or gross inadequacy of price, to have been intended by the parties as a security for a loan or an existing debt."

In commenting upon the *Wallace* case, it is said in the *Bogk* case, "The purport of this case is that, in the absence of proof of a debt or of other explanatory testimony, the parties will be held to have intended exactly what they have said upon the face of the instruments."    In these cases it was contended that the execution of a contemporaneous agreement for a resale relaxes the rule first stated as to the *quantum* of evidence required in such cases.

"In order to convert what appears to be a conditional sale into a mortgage, the evidence should *be so clear as to leave no doubt* that the real intention of the parties was to execute a mortgage.    It may well be that a person buys lands in satisfaction of a precedent debt, or for a consideration then paid, and at the same time contracts to reconvey the lands

upon the payment of a certain sum, and there is no intention on the part of either party that the transaction should be, in effect, a mortgage. The covenant to reconvey is not necessarily either at law or in equity a defeasance. It is one fact which may, in connection with other facts, go to show that the parties really intended the deed to operate as a mortgage; but standing alone it does not produce that result. Something more is necessary; and an indispensable thing is a debt by the grantor to the grantee for which the conveyance is security." 1 Jones, Mortgages (3d ed.), § 260. See, also, *Henley v. Hotaling*, 41 Cal. 22; *Sullivan v. Woods*, 5 Ariz. 196, 50 Pac. 113; *Winters v. Swift*, 2 Idaho 60, 3 Pac. 15; *Baird v. Baird*, 48 Colo. 506, 111 Pac. 79; *Cowell v. Craig*, 79 Fed. 685; *Conway's Ex'rs v. Alexander*, 7 Cranch 218; *Bigler v. Jack*, 114 Iowa 667, 87 N. W. 700; *Adams v. Pilcher*, 92 Ala. 474, 8 South. 757.

In the *Sullivan* case, the mortgagor conveyed the property to the mortgagee by a deed absolute, and on the same day took from the grantee a lease with an option to repurchase the property for the amount of the mortgage. The lease recited that the lessee shall pay $15 per month as *interest*. At the time of making the deed, lease and option, the mortgagor returned the notes to the mortgagee and released the mortgage. The court said that, construing the papers together, they show clearly that it was the intention of the parties "to save the expense of a foreclosure."

In the *Baird* case, the court, in speaking of the force of a deed and a bond for a deed given back to the grantor upon the same date, said:

"We say here the deed and bond for a deed were complete, clear, certain and unequivocal beyond substantial doubt, and that their validity should have been upheld at the trial."

In 20 Am. & Eng. Ency. Law (2d ed.), 942, the rule is thus stated:

"Where the right to repurchase is optional and creates no obligation to do so on the part of the grantor there is no mortgage, but a conditional sale."

In the *Adams* case it was held that where it is sought to establish that a deed absolute with the right to repurchase was intended as a mortgage, clear and convincing evidence is required to overthrow the presumptions arising from the written instruments. Moreover, this court has, we think, uniformly adhered to this view of the law. *Conner v. Clapp*, 37 Wash. 299, 79 Pac. 929; *Swarm v. Boggs, Reed v. Parker, Dabney v. Smith* and *Hesser v. Brown, supra.*

In the *Swarm* case, the mortgagor conveyed the property to the mortgagee by a deed of warranty, for a consideration of the amount of the principal and interest of the mortgage debt, viz., $1,175. The deed contained the following clause:

"This deed is given in satisfaction of a certain note and mortgage for $1,000, dated March 25, 1891, and said grantors shall have the right to redeem or repurchase said premises at any time within one year, by paying the said sum of $1,175, together with interest, until said redemption, at the rate of fifteen per cent per annum, and all costs and taxes paid by the grantee; the *grantors* to have possession for said year."

Speaking of the construction to be given to the deed as a whole, the court said:

"It appears from the face of this instrument, taken as a whole, that it was intended by the parties to take the place of a mortgage then in force between them, and to hold that by its execution and delivery no substantial change had been wrought in the relations of the parties would be to hold that the making of the instrument was but an idle ceremony."

In the *Reed* case, the property was conveyed by a deed absolute in form, the consideration being the payment by the grantee of certain encumbrances against the property. Contemporaneously with the execution of the deed, the grantee executed to the grantors an option to repurchase the property within two years upon their paying to the grantee all sums advanced by her, including taxes and insurance, with stipulated interest. In answering the contention of the

grantors that the transaction was intended to be a mortgage, the court said:

"If the written contract is considered alone, without reference to any extrinsic testimony, we think it clearly sustains the findings."

And considering the question as to whether the relation of debtor and creditor existed between the grantors and the grantee, the court observed:

"To have created the relation of mortgagor and mortgagee between the parties, it was essential that there should have been a debt capable of enforcement by action, and which was intended to be secured by the mortgage."

In the *Conner* case the court, speaking of the deed and contemporaneous agreement to reconvey, said: "These instruments were executed in their present form deliberately and intentionally."

In the *Dabney* case, when the note and mortgage were more than five years past due and no payments had been made thereon, the mortgagors conveyed the mortgaged property to the mortgagee by a deed of general warranty. Five days later, and as a part of the same transaction, the grantees executed and delivered to the grantors a contract whereby they agreed to reconvey the property to the latter upon a day named, upon payment to them of the mortgage note with accumulated interest, taxes theretofore paid by the grantees, taxes thereafter to be paid, together with interest, less rent collected by the grantees with interest thereon. The contract, after reciting a cancellation of the indebtedness, provided that in case the grantors failed to *"redeem"* the property on or before the date fixed in the contract, then the deed "shall be absolute" and the contract "null and void" and "of no force and effect." The court said: "We are satisfied that, under the facts of the case, the transaction was clearly a sale and not a mortgage."

It is argued that the later case of *Collins v. Denny Clay Co.*, 41 Wash. 136, 82 Pac. 1012, is not in harmony with

this view of the law. In that case property of the value of $27,880 was transferred for an indebtedness of $8,000, only $3,500 of which was released. The disparity between the value of the property and the consideration was so gross that the court could reach no other conclusion than that the assignment was intended as security for the money.

There are in this case no indicia of a mortgage upon the face of the instruments. The leases containing the option to repurchase are carefully drawn. In each of these instruments the ownership of the lessor is expressly asserted. In addition to this, they each contain a stipulation to the effect that an underletting or sale under legal process shall terminate the lease. They contain no acknowledgment of a debt, and do not obligate the respondent to purchase the property, but clearly and emphatically give him an option to do so.

Viewing the question from principle, it seems illogical to hold that clear and convincing evidence is required to establish that the transaction is a mortgage, where the deed is absolute and there is no collateral writing, but that where there is a contemporaneous agreement to sell the property, less evidence is required to establish the mortgage theory. Our view gives harmony to the law. The general rule is that, when it is sought to set aside a written instrument on the ground of fraud or for mistake, clear and convincing evidence is required to overthrow the writing. Parol evidence is only admissible in this class of cases to prevent the perpetration of a fraud. Indeed, the action is grounded upon fraud. Whether the transaction is embodied in one or a number of contemporaneous instruments, it would be a fraud to permit them to be used for a purpose foreign to the intention of the parties. For this reason equity permits the transaction to be opened, to the end that the intention of the parties may be determined and given force.

It is next contended that the record is replete with clear and convincing evidence, parol and written, that the transaction was intended as a mortgage. In the solution of this question

the principal test is whether the relation of debtor and creditor continued after the execution of the instruments. 20 Am. & Eng. Ency. Law (2d ed.), 940; *Sadler v. Taylor*, 49 W. Va. 104, 38 S. E. 583; *Neeson v. Smith*, 47 Wash. 386, 92 Pac. 131; *Hinchman v. Cook*, 45 Wash. 490, 88 Pac. 931; *Reed v. Parker, Swarm v. Boggs*, and *Henley v. Hotaling, supra.*

The court found that the notes were surrendered and canceled; that no new notes or evidences of indebtedness were given, but that the debt was not extinguished. A careful reading of the record has convinced us that the debt was extinguished, and that all the parties so understood it at the time. An intelligent discussion of this branch of the case makes a brief statement of the facts pertinent. The mill was burned September 8, 1902, and was not rebuilt. The respondents continued to pay rent until January 1, 1904, but made no payments either of rent or taxes thereafter. On October 17, 1904, the appellant addressed the following letter to the respondents:

"Regarding the property which we have held for you under contract, we beg to state that we have gone to considerable expense in having the same filled in from the channel, and have been obliged to clean up the taxes and the like, and inasmuch as you cannot pay us the interest on the contract, we do not feel under obligations to continue the verbal understanding that you should have any equity that might accrue through sale of the property. You will please take notice, therefore, that any such understanding is hereby revoked."

As stated, the appellant entered into a contract for a sale of the property October 30, 1905, and conveyed it to the purchaser February 6, 1906. The respondent made all the payments to the state except the last, which was paid by the appellant. The deed being a general warranty, he did no more than his legal duty required. Five thousand dollars insurance money was collected after the fire. Three thousand five hundred dollars of this amount was applied on the contract of purchase, and $1,500 was applied to the payment of

Johnson's unsecured note. This was done with his consent. It will be remembered that, under the terms of the last lease, Johnson agreed absolutely to pay $6,000 in installments on the purchase price, and was given an option to purchase upon his paying $8,000 additional. On November 13, 1906, Johnson tendered the appellant $15,000 and demanded an accounting. The original complaint was filed February 6, 1907. After receiving the letter of October 17 and before the date of the tender, Johnson claims that he made certain demands for a statement of his account.

The respondents' version of the transaction is that the negotiations leading up to the execution of the two instruments was conducted with Mr. Thorne, the president of the appellant; that he offered a new note and mortgage for the entire indebtedness, but that Mr. Thorne said that was not satisfactory, that it would not satisfy the bank examiner, and that he could not take it; that Thorne said the papers would be the same as a mortgage to secure the indebtedness and that the deed would be a matter of form to satisfy the bank examiner. He further states that the property was worth twice the indebtedness; that he so told Thorne; and that he gave a new ninety-day note for $14,000. He admits, however, that he made certain changes in the last lease. He further testified that he had no conversation with Mr. Chas. Richardson, the appellant's attorney, pending the negotiations and the execution of the papers. Mr. Richardson testified that the mortgages and the unsecured indebtedness had been placed in his hands for adjustment prior to the date of the deed; that the instruments were executed as an absolute settlement of the indebtedness; that he delivered the notes to Johnson; that his instructions from the appellant were to "clean up" the indebtedness and give Johnson an option to buy the property, and that his conversation with Johnson was that the property was "absolutely" the property of the bank; that Johnson so understood the transaction, and that no new note was taken.

Mr. Albertson, then and now the cashier of the bank, corroborates Richardson. He says that the sale was intended to be absolute, with a lease and option to purchase; that the debt was extinguished; that no new note was given; and that the rent was fixed on the basis of six per cent. Mr. Thorne testified that there were numerous conversations pending the negotiations; that the deed was taken to avoid a foreclosure of the mortgage; that he did not tell Johnson that the deed would be the same as a mortgage; that no new note was taken; and that the notes were delivered to Johnson and the indebtedness extinguished.

The respondents put much stress upon the facts that in numerous letters written by the appellant to Johnson it variously referred to the transaction as interest upon the note, interest upon the indebtedness, and interest upon the contract; that the appellant carried the transaction in its bills receivable, not transferring it to real estate until December 21, 1904, and that it was reported in the bills receivable to the comptroller of the currency. Those matters are, however, all satisfactorily explained by Mr. Albertson, that for convenience he carried all revenue producing contracts as bills receivable, and that the report to the comptroller was summarized so that its nature was understood. As we have pointed out, the deed and lease were promptly recorded. The court found that no new note was given. Neither the bank examiner nor the comptroller could therefore be misled. In checking up the bank the examiner would necessarily find that there was no note, and that the bank held the legal title to the property subject to its lease and contract to convey if the option was exercised. Nor do we think that the letters have the significance contended for by the appellant. It is worthy of mention, however, that Johnson abandoned the property after the expiration of his second option; that he paid no taxes thereafter; that he gave no heed to the maturity of the last payment due the state, or to the letters of the ap-

pellant advising him that the property was about to be sold
for nonpayment of street assessments.

Mr. Albertson further testified that, after the fire in Sep-
tember, 1902, he told Johnson that he could have a reasonable
time to effect a sale of the property, provided he would comply
with the terms of the lease and pay the taxes and the assess-
ments against the property, and that upon Johnson's failure
to do these things, he wrote him the letter which we have set
forth.

The respondents further urge that if the transaction had
not been understood to be a mortgage, the appellant would
not have applied $1,500 of the insurance money to the pay-
ment of Johnson's unsecured note. We think that it may be
gathered from the evidence that the respondent then ex-
pected to be able to carry out his option, and that the appel-
lant entertained the hope that he would do so. If the option
was exercised, the advantage would be with the appellant.
If the respondent failed to exercise the option, the appellant
did not regard the unsecured note as a thing of value.

To summarize, the respondent is contradicted by the facts
that the notes were surrendered and the mortgages satisfied,
by the testimony of attorney Richardson, Albertson, the
cashier of the bank, and Thorne its president, by the written
instruments, by the circumstances of his abandonment of the
property, his failure to pay taxes and assessments after his
option expired, and his failure to accept the overtures of the
appellant to apply the insurance money to the rebuilding of
the mill after its destruction by fire.

Finally, it is said that the disparity between the amount of
the indebtedness and the value of the property at the time the
deed was executed is so great as to lead irresistibly to the con-
clusion that the deed was intended as security. It is true
that the court found that the property was of the value of
$22,000 at that time, and a number of witnesses so testified.
However, practically all the witnesses admit, and the court
knows, that there was an extraordinary depression of values,

beginning early in 1893 and continuing until 1,898. Mr. Balkwell, who has been engaged in the real estate business in Tacoma for 22 years, testified that the property had no market value in 1897, and that "a man would have to take what he could get for his property in those days." Captain Dericksen, who owned mill property adjoining the property in controversy, gave like testimony. His evidence is that $14,-000 was a fair price for the property and that "you could hardly give a mill away in 1897." Mr. Arkley, accountant of the Tacoma Land Company and manager of its successor, the Tacoma Land & Improvement Company, testified that real estate had no market value in 1897. Mr. Albertson and Mr. Thorne gave like testimony, each asserting that when the deed was given, the value of the property was less than the indebtedness. Moreover, the bank, and as the court found, in good faith, sold the property in October, 1905, for $16,-000. After writing the letter which we have set forth, it offered the property for a time for $10,000, and later for $12,000. After the sale by the bank, local causes produced a sudden and rapid expansion of values in this and adjacent property. The extraordinary depression in values of all kinds of property from 1893 to 1898 is a fact well remembered by all men who lived in the state at that trying time. The effect of the panic was too disastrous and the memory of those who witnessed it is too keen to permit it to be so soon forgotten. It cannot be obliterated by the testimony of witnesses.

Johnson admits that the bank refused to take a new mortgage. It must be assumed that the parties had a purpose in surrendering the notes, satisfying the mortgages, and taking a deed. We think the purpose was on the part of the bank to avoid a foreclosure, and on the part of Johnson to avoid a deficiency judgment. Courts should encourage rather than condemn such settlements, when fairly and understandingly entered into. Johnson is a business man of wide experience. We think the written instruments express

the transaction as it was. If the property had depreciated in value and the appellant had sought to treat the transaction as a mortgage, no court would have decreed a foreclosure. The evidence would have forbidden such a course. The view we have taken of the case makes it unnecessary to consider the other interesting questions presented.

The judgment is reversed, with direction to enter a judgment for the appellant.

DUNBAR, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.